HOLLMANN v. CONLON *et al.*, *Appellants.*

Division Two, March 29, 1898.

143 369
147 384
143 369
163 426

1. **Specific Performance:** TIME IN CONTRACT. A unilateral memorandum of a contract for the purchase of land, provided that the purchase price was "payable in cash" and the purchaser was "accorded ten days time from this date in which to have the title investigated." *Held,* that the purchase price became due on the tenth day, and that to extend the time beyond that date would be to give the purchaser an unsettled and indefinite time in which he might make payment.

2. ———: EXECUTORY CONTRACTS. Where a contract is *executory* its enforcement is not a matter of absolute right, but rests in the sound discretion of the court, to be granted or denied as the varying circumstances of each particular case may demand, and will not be granted if the decree would produce injustice between the parties, or where it would be inequitable considering all the circumstances of the case.

3. ———: ———: ATTITUDE OF PARTIES. Where the contract is executory, a court of equity will lend a favorable ear to a defendant offering evidence to resist a decree for specific performance, where such court would turn a deaf ear to a plaintiff presenting similar evidence in an endeavor to have a contract specifically enforced, and especially is this true as to an option or unilateral contract (so called) where "the vendor is bound by a cable, and the vendee by not so much as a silken thread."

VOL. 143 mo—24

Hollmann v. Conlon.

4. ———: ———: UNILATERAL CONTRACTS: TIME OF ESSENCE. In a suit for the specific performance of an executory, unilateral contract, where one party is bound and yet unable to enforce the unilateral contract against the other who is free, the parties do not stand on an equal footing, and in consequence of these things time must be deemed of the essence of the contract, and when the time given by the memorandum expires without performance on the part of the option-holder, the right of such holder is *ipso facto* gone. So that it is *held*, in a suit for the specific performance of a unilateral contract for the purchase of land, "which property is this day sold for the total sum of $4,000, payable in cash," the purchaser being "accorded ten days time from this date in which to have the title *investigated*" and $100 "earnest money" being paid down, that, "plaintiff having ten days in which to become satisfied or dissatisfied with the title, it was incumbent on him on the last day of the time allotted him to announce his acceptance of the terms offered, and thereupon to pay the balance due, and that failing in these particulars his right to enforce specific performance expired on that day, and could not be resuscitated by a subsequent tender of the amount due, nor by bringing suit to compel performance." Plaintiff claimed the taxes were not paid and offered to pay the remaining $3,900 less the taxes, and it is held that "his offer to pay a less amount than what was due was equivalent to a refusal to pay the full sum due," and this was especially the case when he was told bv defendant's agent that unless he paid the full sum due the trade was "off."

5. ———: ———: ———: "MATERIAL" MATTERS. "No man is entitled to the aid of a court of equity when that aid becomes necessary by his own fault." Before plaintiff can successfully invoke the powers of an equity court to force the performance of a contract to purpurchase land he must have been "ready, willing and eager" to perform the contract on his part. So that, if he tries to excuse his failure to pay the full sum due for the land on the ground that he made tender of all money except certain taxes due against the land, which defendant agreed to pay, his failure will be fatal to his obtaining specific performance, even though time is held to be simply a *material* matter.

6. ———: EARNEST MONEY: STATU QUO. Where specific performance is denied plaintiff, earnest money paid by him will be ordered refunded without interest, and the bill will not be dismissed until it is refunded.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

REVERSED AND REMANDED (*with directions*).

*G. A. Finkelnburg* for appellants.

(1) The granting of a decree for specific perform-ance is at all times a matter of discretion, not a matter of right, and such a decree may be granted or refused as the court may think proper under all the circum-stances of the case, or plaintiff may be remitted to his action at law. Story's Eq., par. 742; *Veth v. Gierth,* 92 Mo. 97, 104; *Paris v. Haley,* 61 Mo. 453; *Pomeroy v. Fullerton,* 131 Mo. 581. (2) There are few cases in which a court of equity will insist on the maxim that he who seeks equity must do equity with more rigor than in those for specific performance, and the party who does not show himself prompt and eager to per-form all that a contract requires of him will not have a decree for specific performance in his favor. Water-man on Spec. Perf., note 2, p. 576. (3) Plaintiff hav-ing wrongfully and captiously refused to close this transaction when called upon to do so and when a deed was tendered to him, he can not now after the property has been otherwise disposed of insist upon being placed in his original position. (4) A plaintiff who refused a title when tendered, can not insist upon specific per-formance of a contract to convey land, when the title he will get is precisely the title which he refused. *Goldthwait v. Crowther,* 9 Utah, 186. (5) This con-tract being within the statute of frauds and having been signed by defendants only, was not binding on plaintiff, who had neglected to sign it. This want of mutuality in a contract has always been held to bear against the remedy of specific performance. *Mastin v. Halley,* 61 Mo. 200; *Warren v. Castello,* 109 Mo. 342; Fry on Spec. Perf., sec. 440. (6) The fact that the $100 earnest money still remained in defendants' hands at the trial does not change the legal or equitable status of this transaction. Defendant's bookkeeper

testified that he offered to return it to plaintiff when the latter refused to pay the purchase money. Plaintiff denies this. But on the other hand it is not pretended that the return was ever demanded by plaintiff or refused by defendant. If necessary the court may in a decree dismissing the bill order the earnest money to be returned. Fry on Spec. Perf., par. 1462 *et seq.* Silence on the part of vendor and non-action after default on the part of vendee are presumptive rescission. *Hogan v. Kyle*, 35 Pac. Rep. 399.

*Fisse & Kortjohn* for respondent.

(1) The contract in question was proven with absolute certainty and the court, in the exercise of a sound discretion, was bound to make the decree it did. (2) Plaintiff never refused to take the property, even according to the evidence of defendant himself, and whether Conlon had a right to rescind the sale or not, he could not rescind the same without offering to Hollmann the earnest money which the latter had paid to him, nor could he rescind the sale at three o'clock on the seventeenth day of January, 1893. (3) Time was not of the essence of the contract in question. (4) The defendant, Charles Green, knew, or was bound to know, all the facts as they appear in evidence; and therefore, if there was a right to specific performance against Conlon, there is now such a right against Green. *Maybee v. Moore*, 90 Mo. 340; *Eggert v. Dry Goods Co.*, 102 Mo. 512. (5) When the courts speak of mutuality as a prerequisite to entitle a party to specific performance, they mean that the contract is such that the thing to be done by either party could be ordered specifically performed. (6) Whenever specific performance has been refused because both of the parties did not sign the contract, such refusal was always based on the proposition that there was no consideration for

the signing by one of the parties excepting the signature of the other.   But wherever one for a consideration signs what is sometimes called a unilateral contract to do a certain thing, such a contract will be specifically enforced, especially when, as in this case, the statute of frauds has not been pleaded.   *Ivory v. Murphy*, 36 Mo. 534; *Luckett v. Williamson*, 37 Mo. 388; *Mastin v. Grimes*, 88 Mo. 478; *Maybee v. Moore*, 90 Mo. 340; *Eggert v. Dry Goods Co.*, 102 Mo. 512; *Pomeroy v. Fullerton*, 131 Mo. 581.

SHERWOOD, J.—Specific performance was asked and obtained upon the following unilateral contract, to wit:

"OFFICE OF GREEN & LAMOTTE,
    "S. E. COR. EIGHTH AND CHESTNUT STREETS,
"No. 47.          ST. LOUIS, January 7th, 1893.
    "Received of Henry C. Hollmann the sum of one hundred dollars, in part payment for a certain parcel of improved property, lying in city block No. 34, and having a front of twenty feet, six inches on the west side of Main or First street, by a depth of one hundred and forty-one feet nine inches, to an alley, and being lot 6 of said block, together with the improvements thereon, being building known as No. 17 South Main street, which property is this day sold to him for the total sum of four thousand dollars, payable in cash. It is agreed by and between the undersigned, that the title to said property is perfect, and will be conveyed free from liens and incumbrances, except as to taxes for the year 1893, which the undersigned purchaser agrees to pay.   If upon examination the title proves to be defective and can not be made good in a reasonable time, the sale shall be off, and the earnest money returned.   This sale is made subject to the approval of the owner; if said sale is not approved, then

the earnest money shall be refunded and the sale be void. Rents now paid go to seller. Purchaser to assume lease expiring March 31, 1895. The said Henry C. Hollmann is accorded 10 days time from this date in which to have the title investigated. Signed and sealed in duplicate by the parties hereto.

"J. A. CONLON by GREEN & LAMOTTE, Agts.    [SEAL.]
    "By W. P. LIGHTHOLDER.                    [SEAL.]"

The separate answers of defendants consisted of general denials.

The substance of the testimony is to the effect that plaintiff had negotiations with Conlon in the latter part of December, 1892, respecting the property in question. Such negotiations resulted in the payment by plaintiff to Conlon of $100 and the reference by the latter to Green & LaMotte as his agents that they would send plaintiff a receipt by mail, which was done next day. By the eleventh day of January next thereafter, the title had been investigated, but no step was taken by Hollmann to settle the matter, nor did he inform Conlon nor the latter's agents, Green & LaMotte, that an examination of the title by Gehner showed that the taxes on the land for 1892, amounting to $83.02, remained unpaid. On the seventeenth day of January, in the afternoon, Hollmann telephoned to Green & LaMotte that he was ready to close the transaction, but still did not inform them that the abstract of title prepared by Gehner showed the taxes for 1892 were unpaid. Upon receiving this telephone message, Green & La-Motte sent Lightholder down to Hollmann's place of business with a deed from Conlon for the property, in order to deliver the deed to Hollmann and to collect the balance of the purchase money, to wit, the $3,900. On Lightholder's arrival, Hollmann for the first time announced that his title examiner had reported the taxes for the year 1892 were unpaid, and thereupon offered

to draw a check for the $3,900, *less* the taxes. This offer Lightholder peremptorily refused to accept, telling Hollmann at the same time that the taxes had been paid; that he himself had paid them, and that the title examiner had erred in his report, but Hollmann asserted that he would stand by his title examiner. Upon Hollmann announcing this determination, Lightholder invited Hollmann to go with him to the title examiner and have the mistake corrected, but this Hollmann declined to do. Lightholder thereupon returned to Green & LaMotte's office where Conlon was waiting to receive his money, and reported what had transpired. Pursuant to instructions, Lightholder called at Hollmann's store again and tried to finish the business, and asked Hollmann to go with him to the collector's office, and he would satisfy him from the books there that the taxes were indeed paid and so entered on those books, but Hollmann refused. Finding himself again baffled by the obstinacy of Hollmann, Lightholder returned to the office of Green & LaMotte for further instructions, and receiving them, for the third time went to Hollmann's store, and told him that he would have to pay the amount due, and without deduction or the sale would be off. But Hollmann replied as he had done before, and throughout these conversations constantly asserted that he had paid the title examiner to investigate the title, was satisfied with that examination and would do nothing further. During this last conversation, Lightholder, as he testifies, took the $100 earnest money, and tendered it to Hollmann, but this is denied by Hollmann and an employee of his who was in Hollmann's office at the time. Lightholder returned the $100 to Conlon. The uncontradicted evidence, not only of Lightholder, but also of the deputy tax collector, and the tax books and receipts themselves produced in court, show that the taxes had in fact

been paid on December 30, 1892, and consequently that in the contention made on this point by Hollmann, Conlon was right and Hollmann was wrong. While Lightholder was endeavoring to close the transaction with Hollmann, Conlon was waiting at Green & La-Motte's office for his money. The evidence shows that he was sadly in need of the money to pay off a mortgage debt, having come from. his home in Chicago to St. Louis expressly for the purpose of selling his property in order to raise the funds which he needed; that he had relied on the matter being closed and the money paid within the time agreed upon in the receipt; that having been delayed, he felt very angry at the delay and the failure to close the transaction and get his money by the time appointed, to wit, January 17, and so on the eighteenth of January, he offered the property to defendant Green for the same price as theretofore offered, and Green, as a mere matter of accommodation, bought the property and received a deed therefor, paying in cash the purchase price, $4,000, to Conlon, who returned to Chicago that night. On the twentieth day of January, Hollmann went to Green & LaMotte's office, and asking for Conlon's address in Chicago, was told that anything left there for him would be forwarded to Conlon. Thereupon Hollmann left, and on same day wrote the following letter:

"St. Louis, January 20th, 1893.
"*Mr. J. A. Conlon, Chicago, Ill.*

"Dear Sir:  A few days ago I received the certificate of title for 17 S. Main street.  I telephoned your agents to call at 2 p. m. to get check for same *wich* they agreed, and they *dit* come down to my office, the title shows that the tax and sprinkling was not paid.  I showed same to the young man.  He told me they were paid.  He told me to go to Mr. Gehner and have it taken *of*.  He went away and came back and

told me, I must pay all or sale' would be off. I told him that I was ready at any time to pay him if that amount for taxes, &c., was canceled. He told me that I could go to the courthouse and see that it was paid. Now as I paid $25 for the investigation I do not think I should run after same to find out if it was paid. Don't think you would? Please send me the receipt and I shall send money to your agents.      Very resp.

"H. C. HOLLMANN & Co."

This letter never reached Mr. Conlon and was returned by the postoffice to the writer about February 15. On the eleventh day of February, Hollmann learned that Green had bought the property. Nothing further was done, however, in the matter by Hollmann until March 8, when his attorney having ascertained that the taxes were paid Hollmann went to the office of Green & LaMotte and made a formal tender of the full amount due, which was declined on the ground that the tender came too late as the property had been conveyed to Green. On March 18, this proceeding was instituted. Upon this basis of facts the rights of the parties litigant in this cause depend and must be determined.

Under our construction of the memorandum in evidence, as the time during which the title to the property was to be investigated expired on January 17, and as the purchase price was "payable in cash," this sum became due on that day. To construe the memorandum otherwise, would be to give to the purchaser an unsettled and indefinite time after the investigation of title had been concluded in which he might make payment, or make up his mind whether he would make payment or not. The parties in this cause by their acts, on the seventeenth of January evidently placed the same construction on the contract that we have indicated, and we hold with them that that construction was correct.

Where, as in this case, the contract is *executory*, and its enforcement is sought, such enforcement is not a matter of absolute right, but resting in the sound discretion of the court, to be granted or. denied as the varying circumstances of each particular case may demand, and will not be granted if the decree would produce injustice between the parties, or where it would be inequitable, considering all the circumstances of the case. For this cause it is that a court of equity will lend a favorable ear to a defendant offering evidence to resist a decree for specific performance, where such court would turn a deaf ear to a plaintiff presenting similar evidence in the endeavor to make out his case. 2 Story Eq. Jur. [13 Ed.], secs. 769, 770; *Hill v. Coal Mining Co.,* 119 Mo. *loc. cit.* 28, 29.

And while it is true that the exercise of jurisdiction by a court of equity to compel specific performance is discretionary, and not a matter of absolute right even where the given contract exhibits all the tokens and insignia of *mutuality*, *a fortiori* is it true as to an option or unilateral contract (so called) where the vendor is bound by a cable, and the vendee by not so much as a silken thread. Touching this subject, an author of established merit remarks: "Where the contract is in anywise unilateral, as, for instance, in the case of an option to purchase, a right of renewal, or of any other condition in favor of one party and not of the other, then any delay in the party in whose favor the contract is binding is looked at with especial strictness. On this principle, the delay of a purchaser in deciding whether he will or will not accept the title is an injustice, because the purchaser can enforce the contract against the vendor whether the title be good or bad, whereas the vendor can only do so in case of a good title." Fry's Spec. Perf. [3 Am. Ed.], sec. 1073.

Numerous adjudications support the doctrine thus announced.

And the distinction is justly taken by the authorities between a perfected contract, that is, where both parties are bound, and therefore ordinarily speaking, time is not regarded of the essence of the contract, and an option-contract where only the intended vendor is bound and the intended vendee not bound, where the relation of vendor and purchaser does not exist, and does not become existent until acceptance by the proposed vendee by the performance of the act specified and within the time specified. In such cases a court of equity will hold that in consequence of the one party being bound and yet unable to enforce the unilateral contract against the other who is free, that the parties do not stand on an equal footing, and that in consideration of these things, time must be deemed of the essence of the contract, and that when the time given by the memorandum expires without performance on the part of the option-holder, the right of such holder is *ipso facto* gone; frequent illustration of this principle is met with in the authorities.

Thus in *Lord Ranelagh v. Melton*, 2 Dr. & Sm. 278, the matter in controversy was as follows: Lessees had an option of purchasing the fee upon giving, within seven years, three months' notice of their desire to do so, and paying a fixed sum at the expiration of such notice. Held that time was of the essence of the contract, and a bill for specific performance, filed by lessees who had given due notice, but had not paid the money at the expiration of such notice, dismissed, with costs. Upon this state of facts, the vice chancellor in delivering his opinion said: "I apprehend the rule of law applicable to cases like the present is perfectly clear. No doubt, if an owner of land and an intending purchaser enter into a contract constituting

between them the relation of vendor and purchaser, and there is a stipulation in the contract that the purchase money shall be paid and the contract completed on a certain day, this court in ordinary cases has established the principle that time is not of the essence of the contract, and that the circumstance of the day fixed for the payment of the money and completion of the purchase being past does not entitle either party to refuse to complete. On the other hand, it is well settled that where there is a contract between the owner of land and another person, that if such person shall do a specified act, then he (the owner) will convey the land to him in fee; the relation of vendor and purchaser does not exist between the parties unless and until the act has been done as specified. The court regards it as the case of a condition on the performance of which the party performing it is entitled to a certain benefit; but in order to obtain such benefit he must perform the condition strictly. Therefore, if there be a day fixed for its performance, the lapse of that day without its being performed prevents him from claiming the benefit. Applying that rule to the present case, if the agreement fixes a day for the payment of the money, then it is clear that if that day is past without the payment, the right to compel a conveyance is lost." And in that case contention was made that payment need not be made at the expiration of the required three months' notice. But on this point the vice-chancellor remarked: "The plaintiffs contend that these words mean, not at the time at which the three months expire, but at any time afterward. If that be the true construction, the consequence would be that not only a day or a week after, but a year or any number of years after the expiration of the three months, the plaintiffs would have a right to tender the money and demand a conveyance; and this is what the

law will not permit. But besides that, if the lessees should think fit not to pay the money, could the owner file a bill to compel them to do so? I apprehend, clearly not; for there is nothing in the agreement to make it obligatory on the lessees to pay the money. It is impossible to put such a construction on the words. 'At the expiration of three months' must mean, not at any time after such expiration, but on the day on which the three months expire.''

A similar contention is made in this case by plaintiff, to wit, that the ten days accorded to plaintiffs in which to investigate the title does not mean that the money should be paid within the ten days, but we are of a different opinion for reasons heretofore stated, as well as those given in the case from which we have quoted. We hold then, that plaintiff having ten days in which to become satisfied or dissatisfied with the title, it was incumbent on him on the last day of the time allotted him to announce his acceptance of the terms offered him, and thereupon to pay the balance due, and that failing in these particulars, his right to enforce specific performance expired on that day, and could not be resuscitated by a subsequent tender of the amount due, nor by bringing suit to compel performance, and his offer to pay a less amount than what was due was equivalent to a refusal to pay the full sum due, and this was especially the case when he was told by Lightholder that unless he paid the full amount the contract would be off.

In *Glass v. Rowe*, 103 Mo. 513, where the words in the unilateral contract were: "This bargain good for twenty days," it was held such words made time of the essence of the contract. In *Coleman v. Applegarth*, 68 Md. 21, the memorandum was in these words: "For and in consideration of the sum of five dollars paid me, I do hereby give to Charles Coleman the

option of purchasing my lot of ground, northwest corner, etc., assigned to me by Wright and McDermott, by deed, dated, etc., subject to the ground rent therein mentioned, at and for the sum of $645 cash, at any time on or before the 1st day of November, 1886." It was dated the third of September, 1886, and signed by Applegarth alone. Discussing the force and effect of this memorandum, ALVEY, C. J., said: "The contract set up is not one of sale and purchase, but simply for the option to purchase within a specified time, and for a given price. It was unilateral and binding upon one party only. There was no mutuality in it, and it was binding upon Applegarth only for the time stipulated for the exercise of the option. After the lapse of the time given, there was nothing to bind him to accept the price and convey the property; and the fact that this unilateral agreement was reduced to writing added nothing to give it force or operative effect beyond the time therein limited for the exercise of the option by the plaintiff. It is quite true, as contended by the plaintiff that, as a general proposition, time is not deemed by courts of equity as being of the essence of contracts; and that, in perfected contracts, ordinarily, the fact that the time for performance has past will not be regarded as a reason for withholding specific execution. But while this is the general rule upon the subject, that general rule has well defined exceptions, which are as constantly recognized as the general rule itself. If the parties have, as in this case, expressly treated time as of the essence of the agreement, or if it necessarily follows from the nature and circumstances of the agreement that it should be so regarded, courts of equity will not lend their aid to enforce specifically the agreement, regardless of the limitation of time. 2 Story Eq. Jur., sec. 776. Here, time was of the very essence of the agreement, the nominal considera-

tion being paid to the owner for holding the property for the specified time, subject to the right of the plaintiff to exercise his option whether he would buy it or not.  When the time limited expired, the contract was at an end, and the right of option gone.''

In *Potts v. Whitehead*, 5 C. E. Gr. 55, the defendant signed a paper drawn by the complainant, by which, for $1 recited to be paid, he agreed that the complainant should have for thirty days the refusal of certain lands therein designated, and agreed that he would convey the lands embraced in the refusal, by a good and substantial deed, in consideration of $20 per acre; the terms to be $500 on the execution of the deed and the balance in mortgage upon the land, with interest at six per cent.  The complainant took no action during the thirty days, and in, relation to this, the court observed:  ''The paper signed by the defendant is not a contract, but on its face, and by its very terms, only a refusal or offer of the lands to the complainant at a certain price; this is not disputed by the counsel of the complainant.  This, like all such offers, was not binding and could not be converted into a contract, unless accepted within the thirty days. Whether when such offer is made for a mere nominal consideration, the person offering can withdraw it within the time specified, it is not necessary to consider, as it was not withdrawn, and like all such offers it would be binding if accepted within the time, and before it was withdrawn.''  See, also, Pomeroy, Spec. Perf. [2 Ed.], secs. 362, 387, 411 and cases cited; Fry, Spec. Perf., sec. 446.

Hitherto, we have been considering this matter as if time was of the essence of the contract, for so we regard it; but if we do not go so far as this, but simply hold that time was *material*, still this concession does not better the situation of plaintiff, because unless he

can give some reasonable excuse for his conduct in refusing to satisfy himself that the taxes were paid, an excuse which he did not furnish, this failure would be equally fatal to his obtaining equitable relief as if time was of the essence. Pomeroy, Spec. Perf., sec. 402.

Had plaintiff been "ready, willing and eager" to perform the contract on his part, as he must have been to successfully invoke equitable relief, we doubtless would never have heard of this case. And in this connection it is proper to bear in mind one of the "Principles of Equity" laid down by Lord KAMES, to wit: "No man is entitled to the aid of a court of equity when that aid becomes necessary by his own fault." Moreover, a court of equity will refuse to aid a vendee who raises untenable, vexatious or trifling objections as an excuse for his failure to complete the contract on his part. Pomeroy, Spec. Perf., sec. 409 and cases cited.

The premises considered, we hold that plaintiff has no standing in a court of equity; that whatever rights he had, he abandoned when he refused to do on his part what the contract required.

We therefore reverse the decree and remand the cause with directions that the lower court dismiss the petition on payment by Conlon to plaintiff of the $100, the same to be without interest.

All concur.