L. J. CHAPMAN v. W. H. BREEZE and BERNICE W. BREEZE, Appellants.—No. 39788.—198 S. W. (2d) 717.

Division One, December 9, 1946.

Rehearing Denied, January 13, 1947.

*Rufus Burrus* and *Charles V. Garnett* for appellants.

874

*W. H. Carr* and *Frank P. Barker* for respondent; *Winger, Barker & Winger* of counsel.

VAN OSDOL, C.—Action in equity for specific performance of a contract alleged as resultant to the exercise of an option to purchase provision in a contract of lease of real property (Lots Nine and Ten, Block One, Lee's Summit), and for an accounting. The trial court found for plaintiff and entered a decree requiring plaintiff to pay into the hands of the clerk of the court the amount due as determined by the accounting, and directed defendants to deposit deed with the clerk within ten days thereafter; or upon the payment and the failure of defendants to convey by deed, the title was decreed to pass to plaintiff. Defendants, husband and wife, have appealed.

Defendants, appellants, Breeze and wife, acquired title to Lots Nine and Ten, and an additional Lot Eight, in March 1940, by purchase from the Chapman Dairy Company for a consideration of $1850. Defendants went into possession of Lot Eight, which was a residence property; and entered into a contract leasing Lots Nine and Ten to plaintiff, respondent, for a term of five years beginning March 25, 1940, at the monthly rental of $30. A dairy pasteurizing plant was situate on Lots Nine and Ten. The contract of lease provided the lessee, plaintiff, should accept the premises in their "present condition" and the lessee, plaintiff, covenanted to keep the premises in "good and sufficient repair." An option to purchase provision was contained in the written lease, as follows,

"Party of the second part (lessee) to have an option to purchase all of said real estate at the price of $1,600.00 provided said option if not taken shall cease and be of no effect after one year from date hereof; and provided further, that party of the second part, if he

does purchase within said one year, shall pay parties of the first part all the costs of all improvements made by parties of the first part during the time before option taken, and that in addition to the said price of $1,600.00.''

The main issue presented in the case is whether plaintiff has exercised the option provided in the option to purchase provision. The trial court's accounting is not questioned on this appeal, except the inclusion in the account of the item of $1600 (purchase price of the property as stipulated in the option provision); more particularly it is here said, the decree in accounting may be affected by the answers to the questions whether plaintiff exercised the option and became the equitable owner of the land, and when; and, if he did not, then the result of the accounting should be ▇▇▇▇ modified to exclude the $1600 purchase price item and to include the item of the accrued rent due and unpaid under the contract of lease.

Plaintiff's petition contained the allegations that the relation existing between plaintiff and defendant Breeze was one of trust and confidence; and that plaintiff and defendant Breeze had, until a few days before the instant action was instituted, treated the ''contract as in existence, and part of the consideration was paid from time to time by plaintiff . . . ''

As stated, upon acquiring the properties, defendants went into the occupancy of the residence building on Lot Eight and, sometime later, defendant Breeze proceeded to effect ''the rehabilitation, repair, remodeling, and reconditioning'' of the dairy plant which was ''run down'' and in a ''dilapidated condition.'' Sometime in 1941, plaintiff moved heavy machinery and equipment into the building and built some inside walls or partitions.

▇▇▇ Now admittedly plaintiff did not exercise the option within the year, that is, before March 25, 1941, by the payment or tender of the agreed price, $1600, unto defendants and by a demand for a deed. And the tender was never made by plaintiff of any unpaid balance of that sum until the institution of the instant action. So plaintiff did not comply with the strict rule of payment or tender of the purchase price as was held is required of an optionee as a prerequisite for specific performance in a case involving an option for the purchase of land (Hollmann v. Conlon, 143 Mo. 369, 45 S. W. 275) and in a case involving an option for the purchase of certificates of corporate stock (Suhre v. Busch, 343 Mo. 170, 120 S. W. 2d 47). But, of course, the strict compliance with an option requiring the payment of purchase price within the time stipulated for the exercise of the option may be waived by the acceptance of the purchase price subsequent to the stipulated time. Bammert v. Kenefick, Mo. Sup., 261 S. W. 78.

▇▇▇ Where there is a valid bilateral written contract of sale of land, it has been said the payment of the purchase price within the stipu-

lated time may be waived, although the payment of the purchase price within the stipulated time was of the essence of the contract. Kyner v. Bryant, 353 Mo. 1212, 187 S. W. 2d 202; 58 C. J., Specific Performance, sec. 373, p. 1099. An option is a complete bilateral contract with mutuality of obligation upon the optionee's election to accept the option. Until the optionee so elects there is no enforcible contract, the option being in effect but an offer, although an offer binding on the optionor until the time stipulated for the election has expired by virtue of the consideration paid for the option, as was the optionor bound in the case at bar wherein we have a contract of lease containing, as an integral part thereof, an option to purchase provision, the payment of the stipulated rent by the lessee (optionee) being a consideration for the option. Tebeau v. Ridge, 261 Mo. 547, 170 S. W. 871. And the performance by the optionee of the accepted option, the payment of the purchase price, within the specified time is essential to an enforcible bilateral contract, if the option instrument makes timely performance a part of or a condition precedent to the exercise of the option. Hollmann v. Conlon, supra; Suhre v. Busch, supra; 66 C. J., Vendor and Purchaser, sec. 24, p. 500.

Options are not in favor in courts of equity; and the optionor only being bound during the time specified for the election to accept the option, any delay in the election beyond the specified time by the optionee in whose favor the option is binding *"is looked at with especial strictness."* (Our italics.) Hollmann v. Conlon, supra. The elements of an alleged waiver should be clearly and satisfactorily evidenced, see generally 31 C. J. S., Estoppel, sec. 162b, p. 460; and now, more particularly, in our case the evidence introduced should be clear and satisfactory in showing the words, acts and conduct relied on as constituting a waiver were unequivocal in affecting and prolonging the specified time within which the option could be exercised; and since a delay in exercising an option is herein involved, we will be especially strict in our examination of ▮▮▮ the unequivocal character of the words, acts and conduct relied on to constitute the waiver. Hollmann v. Conlon, supra.

▮ In the instant case payments were made to defendant Breeze by plaintiff subsequent to the time, March 25, 1941, stipulated for the exercise of the option; and, as stated, the plaintiff has come into possession, has installed heavy equipment and has made improvements. However, the evidence (of the words, acts and conduct of the parties subsequent to the execution of the contract) is not clear and satisfactory in strictly showing the payments were made and unequivocally accepted as payments upon the purchase price. It could be quite reasonably inferred the moneys paid were considered by defendant Breeze as rent that plaintiff's possession was that of a lessee; and that the improvements and equipment made and installed by him were for his use as lessee.

But, as stated, plaintiff had alleged he and defendant Breeze stood in a relation of trust and confidence, and the trial court reached the conclusion that the timely exercise of the option was waived upon hearing evidence of the words, acts and conduct of the parties subsequent and antecedent to the contract. Even, assuming, as plaintiff alleged and as the trial court found, defendant Breeze stood in a fiduciary relation to plaintiff, the letter of the written specification as to time for the exercise of the option should not be varied by evidence antecedent to the contract. (It is not herein alleged or contended the letter of the writing would consummate a fraud.) Now the trial court did (and we will here) consider the evidence antecedent to the contract as to the parties' relation, and as to their words, acts and conduct. But such antecedent evidence was and is examined to throw light on the question whether the words, acts and conduct subsequent to the contract constitute a waiver. We continue to respect the contract as having meant what is said.

Summing up, it is here stated that in examining into the question whether the words, acts and conduct of the parties subsequent to the execution of the contract constitute a waiver, we will go, as did the trial court, into the whole evidence—the contract of lease including the option to purchase provision, and the words, acts and conduct of plaintiff and defendant Breeze subsequent and antecedent to the contract; but the evidence antecedent to the contract must not vary the contract, and we will try to remember that the onus was on plaintiff to make strict proof of the waiver and by clear and satisfactory evidence.

Considering the evidence as a whole—it was shown defendant Breeze had, until some five years ago, for years been associated with plaintiff in the dairy business, representing him in the capacities of "field man" and purchasing agent. Plaintiff had long been engaged in extensive dairy operations and had previously been an officer and stockholder of the Chapman Dairy Company. At the time defendants acquired the properties there was thought to be a restriction which would preclude the use of the dairy property by plaintiff as owner. It was in evidence that defendant Breeze had told plaintiff he, Breeze, could get the restriction eliminated (it seems the "restriction" was or had been "eliminated"). A witness testified of his conversation with defendant Breeze concerning the purchase of the property, "he (Breeze) was buying it, as he told me, for Mr. Chapman, and some way or other . . . Mr. Chapman couldn't use Chapman's name, and if he had they wouldn't sell it to him." Plaintiff testified he told defendant Breeze, "I would like very much to have the building and if he (Breeze) could purchase it I would take it off his hands." Defendant Breeze made a $100 cash payment on the purchase price, and plaintiff instructed defendant Breeze to apply to a bank of Lee's Summit for a loan to pay (to Chapman Dairy Company) the balance of the pur-

chase price and to advise the banker that he, plaintiff, "was behind it." The bank made the loan.

Now, here we digress to say that even thus far it appears to us that defendant Breeze in buying the dairy property intended it should ultimately be bought of him by plaintiff.

Plaintiff also testified that sometime after the contract of lease was executed, he and ▆▆▆ defendant Breeze went to a lumber company and plaintiff (in the presence of defendant Breeze) told the manager of the lumber yard, "Breeze was going to make some repairs on the dairy building, that I (plaintiff) would purchase the property and anything that he (Breeze) would buy would be all right, satisfactory with me."

Now here it surely could be most reasonably said plaintiff, in the presence of defendant Breeze, signalized his intention to buy the property, that is, his aceptance of the option.

Lumber and materials were supplied by the lumber company, some of which were used by defendant Breeze in repairing both the residence and the dairy properties. Thereafter, Breeze sold the residence property for $1100, satisfied a mechanic's lien for the lumber and materials which he had used in the repair of the buildings (residence and dairy), and made a payment on the loan. Plaintiff authorized defendant Breeze to sell plaintiff's farm machinery and apply the proceeds "on the property." This was in late October or early November, 1942.

Apparently the trial court was of the view the option had been exercised by the payment on the purchase price in the form of the proceeds of the sale. Accordingly the trial court allowed defendants rent to the time of the sale in the sum of $930, of which, the trial court found, plaintiff had already paid $180.

Defendant Breeze repaired and repainted, and sold the machinery at public auction, receiving the gross total sum of $2,243.50. Breeze also sold trucks belonging to a third party who owed plaintiff, receiving the gross total sum of $1475. These sales were with plaintiff's consent and according to his instruction to defendant Breeze to sell the personalty and "apply it on the Lee's Summit property." These sales were made, as stated, by defendant Breeze at plaintiff's direction; and the sales were made by defendant Breeze "under his name as he being the owner." Defendant Breeze also asked plaintiff for some other equipment of value, fixed by the trial court's findings, $175; "I (plaintiff) told him to go down in the basement and take anything that he wanted to, anything that he could use that we were not using every day, keep an inventory of it, and let me know about it, and apply the proceeds on the property." Plaintiff did not ask for any itemized statements or receipts relating to these transactions and defendant made none. "There was no misunderstanding between Mr. Breeze and myself as to the purchase of the

property. I purchased the property prior to the making of the deed. I told Mr. Breeze I would take the property, prior to the making of the contract . . . I don't think we ever discussed the option . . . just ignored it.'' Plaintiff repeatedly requested defendant Breeze to get ''this property straightened up.'' On one occasion, plaintiff asked defendant Breeze ''to check the whole matter up . . . check up where we stood and get the whole thing together and let me know how much I owed him or how much he owed me on the property and get the property deal closed up and get it paid off, and give me the deed . . . He said he would do it.'' In the more recent months, preceding the institution of the action, the property had greatly increased in value. The plaintiff had not known defendants were contending he had not bought the property until a few days prior to the institution of the action.

This evidence in our opinion clearly proves defendant Breeze was, in the purchase of the property, acting in his own behalf *and* in the interest of plaintiff as the probable ultimate purchaser. And wherein other evidence conflicts with the evidence we have summarized, we here give due regard to the opportunity of the trial chancellor to judge the credibility of the witnesses. With this evidence and the evidence of the subsequent acceptance of the option but within the specified time in mind, the plaintiff's entry into possession of and his moving of heavy equipment into the building, and his construction of improvements by erecting partition walls become of clear significance as the acts of a purchaser; and the sales of the personalty by defendant Breeze in accordance with plaintiff's direction that the proceeds be applied ''on the property,'' now is clearly seen as definitely an application of the proceeds on the purchase price of the property, effectuating a waiver of the timely payment. It has been clearly proved, we believe, plaintiff and defendant Breeze were using plaintiff's available movable assets which plaintiff could spare to liquidate the purchase price, plaintiff entrusting defendant Breeze with the consummation of the sales of personalty and trusting in him to keep an account of the proceeds and make plaintiff a deed when the purchase price, $1600, had been netted by sales of personalty. Defendants having untimely received moneys as purchase price, we hold defendants waived timely payment. Moreover, we believe (defendants having received payments on the purchase price and having seen plaintiff in possession, erecting improvements and installing heavy equipment as a purchaser) might now in equity and good conscience be considered to be estopped from a reliance on the essentiality (to a purchase) of a timely compliance with the option to purchase provision which timeliness the parties had come to deem inessential to the purchase, and had ''ignored.''

■ Defendants make the points that the property was owned by defendants as tenants by the entireties, and that the evidence is insufficient (they say) to show defendant wife, Bernice W. Breeze, authorized defendant husband to waive the time specified for the exercise of the option. Plaintiff had pleaded defendant husband's agency for his wife, and also her ratification of his acts. It is unnecessary to particularly review the evidence tending to show the agency of the husband. In her separate answer, defendant wife joined with the defendant husband in praying judgment for an amount which would include the allowance (in the accounting proceeding) of the amount defendant husband had expended to "recondition, remodel and repair" the dairy building. This amount, additional to the purchase price ($1600), was due defendants upon the exercise of the option (see option to purchase provision, supra) and was allowed defendants by the trial court in the accounting proceeding. The record is devoid of any evidence tending to show plaintiff undertook to pay for the reconditioning, remodeling and repairing of the building, except upon his exercise of the option. In effect, the answer alone tends to indicate defendant wife's ratification of defendant husband's acts as her agent, quite as the trial chancellor found from all the evidence relevant to the question. And the defendant husband's answer in this respect is additionally indicatory of a position inconsistent with his contention plaintiff had never become the purchaser of the property.

■ We have observed the purchase price paid by defendants for the three Lots, Eight, Nine and Ten, was $1850. Defendants sold the residence, Lot Eight, for $1100, and has sold the dairy property, Lots Nine and Ten, to plaintiff for $1600. The trial chancellor in the accounting proceeding has allowed defendants rental in the sum of $930; and has taken into account the labor, materials and other expense in improving the dairy building and in the repair, reconditioning and sale of the farm machinery and trucks. Other items we have not mentioned, including the moneys sufficient for the payment of the balance due on the loan were (correctly, we think) taken into account in the accounting proceeding and in the decree. We can see no basis for a view that the decree, in any respect, is other than equitable and just.

The decree should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur,