CARROLL'S WAREHOUSE PAINT STORES, INC., Plaintiff–Respondent,

v.

RAINBOW PAINT AND COATINGS, INC.,

and

Larry Ellison and Merrilyn Ellison, Husband and Wife,

and

Carl Jensen and Virginia L. Jensen, Husband and Wife,

and

Murray Jensen and Karen Jensen, Husband and Wife, Defendants–Appellants,

and

Rainbow Coatings Corp.,

and

Rainbow Labels Corp., Intervenors–Appellants.

No. 17344.

Missouri Court of Appeals, Southern District.
Division Two.

Feb. 4, 1992.

Benjamin J. Francka, Law Offices of Benjamin J. Francka, Springfield, for plaintiff-respondent.

John R. Lewis, Law Offices of John R. Lewis, P.C., Springfield, for Carl Jensen and Virginia L. Jensen, Murray Jensen and Karen Jensen, Rainbow Coatings Corp. and Rainbow Labels Corp.

No appearance, for Rainbow Paint and Coatings, Inc., Larry Ellison and Merrilyn Ellison.

MAUS, Judge.

Carroll's Warehouse Paint Stores, Inc. (Carroll's), in connection with the sale of a paint business, leased a building to Rainbow Paint Company, Inc. (Rainbow). Defendants Larry and Merrilyn Ellison, Carl and Virginia L. Jensen, Murray and Karen Jensen, guaranteed the payment of designated amounts of the rent due under the lease. Intervenors Rainbow Coatings Corp. (Rainbow Coatings) and Rainbow Labels Corp. (Rainbow Labels),[1] occupants of the building, claim under Rainbow. Carroll's brought this action in five counts to recover possession of the building, accrued rent, and to enforce the guarantees. Defendants and Intervenors resisted upon the basis Rainbow Paint and Coatings, Inc. (Rainbow P & C), as assignee of Rainbow, had exercised an option contained in the lease to purchase the building. Rainbow P & C filed a counterclaim in six counts for specific performance and, on various theories, for damages and attorney fees. Each claim was premised upon the proposition Rainbow P & C had exercised the option. Upon a motion for partial summary judgment on that issue, the trial court found Rainbow had not exercised the option and the lease had been terminated. Upon final hearing, it rendered judgment in favor of Carroll's for accrued rent and recovery upon the guarantees. It denied the counterclaims. Defendants and Intervenors state two points on appeal.

The following is a sketch of facts necessary to the disposition of those two points. On December 10, 1987, John E. Carroll and Elizabeth C. Carroll sold all of the stock of Rainbow to R.P.C. Acquisition Corporation (Acquisition), a corporation owned by the individual Defendants. As a part of that transaction, Carroll's, by a lease dated De-

---

1. Since the Appellants and Respondent in their briefs refer to both Rainbow Coatings and Rainbow Labels as Intervenors, this court will follow suit. However, the record does not reflect a motion to intervene on behalf of Rainbow Labels. Also, the final judgment of the trial court lists Rainbow Labels as a Defendant and Rainbow Coatings as the only Intervenor.

cember 11, 1987, leased a building to Rainbow for a term of five years, commencing on the 1st day of January, 1988. The rental was $4,500 per month, due on the 1st day of each month. In addition, Acquisition agreed to pay John E. Carroll and Elizabeth C. Carroll $1,000 per month for five years for consulting fees and $125,000 for a "non-compete agreement", payable in five annual installments of $25,000, beginning January 1, 1989. As stated, the individual Defendants, who owned Acquisition, guaranteed, in varying amounts, the payment of the rental. Rainbow and Acquisition merged into Rainbow P & C. Rainbow P & C assumed the lease. As a result of a subsequent reorganization, Rainbow Coatings and Rainbow Labels occupied the building, holding under Rainbow P & C.

The lease contained the following option:

"25. *Option to Purchase.* At anytime during the initial term or any renewal term of this Lease, Lessee shall have an option to purchase the Premises (free and clear of encumbrances) (including improvements) for the M.A.I. appraised price determined at the time the option is *exercised by written notice to Lessor.* The M.A.I. purchase price will be reduced by the cost of the permanent improvements placed in the Premises by Lessee. If the Lessor is not satisfied with the valid M.A.I. appraised price proposed by Lessee, then within five (5) days, Lessor shall select an M.A.I. appraiser to appraise the property and who shall provide a valid M.A.I. purchase price within ten (10) days thereafter. If the parties do not then agree on an M.A.I. price, then within five (5) days thereafter, the two (2) M.A.I. appraisers shall select a third appraiser who shall provide a valid M.A.I. purchase price within ten (10) days thereafter, and the purchase price shall then be established as the average of such three (3) appraisals. In the event this Option is exercised by Lessee prior to the expiration of the initial five (5) year term, in addition to and exclusive of the purchase price, and notwithstanding the termination of the Lease and rentals thereunder upon exercise of the Option, Lessee shall pay Lessor an amount of Nine Hundred Fifty Dollars ($950.00) per month during the remaining unexpired initial five (5) year term, payable on and for each month rental would have otherwise been due and payable had the option not been exercised. This obligation shall survive closing of the option purchase." (Emphasis added.)

On November 4, 1988, Larry D. Ellison wrote John Carroll a letter regarding purchase of the building. The letter was written on a letterhead of "Rainbow Companies—Rainbow Paint & Coatings, Inc. Rainbow Labels, Inc." The letterhead indicated Larry D. Ellison was "President". The essence of the letter is the following:

"We would also like to institute proceedings to determine the feasibility of our purchase of the building and real estate."

Thereafter, the property was appraised by an M.A.I. appraiser employed by Rainbow P & C. The resulting appraisal was unacceptable to Carroll's. The property was then appraised by an M.A.I. appraiser employed by Carroll's. The price determined by this appraiser was unacceptable to Rainbow P & C. The property was then appraised by a third M.A.I. appraiser. During this process, the parties discussed "the cost of the permanent improvements placed in the premises by lessee", to be deducted from the purchase price as provided in paragraph 25 of the lease. The parties could not agree upon this cost.

On January 30, 1989, Larry D. Ellison again wrote John Carroll on the same letterhead as his previous letter. After preliminary recitals, the crucial part of that letter is as follows:

"Our agreement requires a third appraisor [sic] to be hired within 5 days after a lack of agreement (this would have been up on January 28) and the final price to be determined within 10 days after that (February 7). This letter is to inform you that your rent payments due January 1, 1989 and February 1, 1989; your consulting payment due January 1, 1989 and February 1, 1989; your non-compete payment ($25,000) due January 1, 1989 and the interest on your

$150,000 note due January 1, 1989 are all being withheld pending your action on our contractual agreement."

This letter was followed by continuing negotiations concerning the cost of permanent improvements made by lessee within the meaning of the lease. The rent due on January 1, 1989, and subsequent installments of rent were not paid. The other payments mentioned were not paid.

By letter dated May 18, 1989, Carroll's terminated the lease. Defendants and Intervenors question the effectiveness of that termination only by the assertion Rainbow P & C had exercised the option. This action was filed May 22, 1989.

A summary judgment upon a separate issue is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c). *Kroh Brothers Dev. Co. v. State Line Eighty-Nine, Inc.*, 506 S.W.2d 4 (Mo.App.1974). There is no genuine issue that the evidentiary material did not establish the facts recited above.

" 'Summary judgment is not precluded if the "facts" alleged to be in dispute are actually differing opinions of the parties of the legal effect of documents or actions which determine their respective rights.' " *Hayes v. Hatfield*, 758 S.W.2d 470, 472 (Mo.App.1988).

■ Defendants and Intervenors' two points on appeal are:

*"Point I*

The trial court erred ... in that evidence before the court ... show the option was exercised by acts of Rainbow Paint and Coatings, Inc., and ratified by acts of respondent."

*"Point II*

The trial court erred ... because the court's finding that defendant's failure to tender the purchase price indicated no intent to exercise the option of purchase

is error as a matter of law in that *once an option is accepted*, tender of the purchase price is not required until tender of an executed deed." (Emphasis added.)

It is obvious the second point is dependent upon the validity of the first point. That is, that the option was exercised by Rainbow P & C before the lease was terminated. If the first point falls, the second point falls with it.

The basic finding of the trial court was that Carroll's termination of the lease on May 18, 1989, was effective and the option had not been exercised while the lease was in force. Those findings include the following:

"The Court believes that the cases and authorities cited by the parties clearly demonstrate the necessity for an unequivocal written exercise of the option to purchase. All writings of Lessee are equivocal and can be classified merely as stating an intention to negotiate. The actions of the parties, including the action of Lessee in failing to tender the purchase price after all three appraisals were completed, based on an average of the appraisals, and the failure of the Lessee to make even the $950.00 monthly payment required if it had exercised the option to purchase, clearly indicate that the Lessee did not intend to exercise the option until, and unless, negotiations were completed to its satisfaction as to the amount to be paid.

Lessee and Intervene [sic] contend that there is a waiver of the provision requiring a written exercise of the option. Such waiver must be unequivocal and specific as to intention. There is nothing in Plaintiff's actions, or the actions of its Officers, which indicate anything more than participation in the game of negotiating initiated by Lessee. There is no substantial dispute of material fact as to this issue. The facts are essentially agreed to and do not permit the conclusion that there was a waiver of the contractual provision which required a positive exercise, in writing, of the option to purchase."

The nature of an option and the time and manner in which it must have been exercised have been succinctly stated.

"An option is unilateral and does not ripen into a contract of purchase and sale until exercised by the optionee. Until the optionee accepts there is no enforceable contract, the option being in effect but an offer on the part of the optionor, although an offer binding on the optionor by virtue of the consideration paid for the option until the time stipulated for the acceptance of the offer has expired. The optionee in exercising the option may or may not be required to pay the purchase price, or a part thereof, within the time, depending upon the terms of the option or offer. Ordinarily time is of the essence in the exercise of an option, and the requirement of the payment of the purchase price within the time stipulated for acceptance of the offer or exercise of the option is essential where the option by its terms makes such payment a part of or a condition precedent to the exercise thereof. The option by its terms may require a written notice of acceptance. If there be no stipulation as to the mode, manner or way the optionee should give notice of acceptance, any manifestation of the determination to accept will suffice, with resultant contract of purchase and sale (if the essential terms of such a contract, or method of determining them, are set forth in the written option or offer). *Chapman v. Breeze*, 355 Mo. 873, 198 S.W.2d 717; *Suhre v. Busch*, 343 Mo. 170, 120 S.W.2d 47; *Lively v. Tabor*, 341 Mo. 352, 107 S.W.2d 62, 111 A.L.R. 976; *Hollmann v. Conlon*, 143 Mo. 369, 45 S.W. 275; *James on Option Contracts*, § 415, pp. 183–185." *Lusco v. Tavitian*, 296 S.W.2d 14, 16 (Mo.1956).

What may constitute the exercise of an option has been emphasized.

"[S]he was required to manifest an acceptance of this option privilege within the time specified[.] It is fundamental contract law that acceptance of an offer must be *unequivocal and certain.* (Citation omitted)." *Frey v. Yust*, 516 S.W.2d 321, 324 (Mo.App.1974). (Emphasis added.)

Paragraph "25" of the lease requires the option created in that paragraph to be "exercised by written notice to lessor" during the term of the lease. To constitute an exercise of the option, the written notice must unequivocally accept the offer extended by the option and result in an unconditional contract to purchase, with the price to be substantially determined as set forth in paragraph 25.

To establish the trial court erred, the Defendants and Intervenors first rely upon the following argument.

"Intervenors contend that the letter from Larry Ellison on behalf of Rainbow P & C, to Plaintiff's president, John Carroll, was a written acceptance of the option. It is the Intervenors' contention that the letter constitutes an unequivical [sic] and certain acceptance of the offer to sell made by Plaintiff."

The letter referred to is the letter dated November 4, 1988, which stated "We would also like to institute proceedings to determine the feasibility of our purchase of the building and real estate." By no stretch of the imagination can this be construed as an unequivocal acceptance of the offer extended by the option. Indeed, it is a disclaimer of an obligation to purchase the building until the feasibility of the purchase had been established. The letter was not an exercise of the option. Cf. *Frey v. Yust,* supra.

■ The Defendants and Intervenors next "contend that the requirement of a 'written exercise of option' was waived by the parties and that the option was exercised by the conduct of the parties."

" 'Waiver' has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of party showing such purpose, and so consistent with intention to waive that no other reasonable explana-

tion is possible." *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo.1969). Also see *Wenneker v. Physicians Multispecialty*, 814 S.W.2d 294 (Mo. banc 1991).

The actions of Carroll's followed the letter dated November 4, 1988. Those actions do not constitute a clear and unequivocal act showing an intention to waive the necessity of a written exercise of the option. The actions of Carroll's are readily referable to cooperation in determining the purchase price in order that Rainbow P & C might determine if it would be feasible for it to exercise the option. The letter makes it clear that until the purchase price had been determined, Rainbow P & C did not intend to be and was not unconditionally bound to purchase the building. This is confirmed by other actions of the parties. For example, if the option had been exercised in any manner prior to the expiration of the initial five-year term, by the terms of the option, Rainbow P & C would have been obligated to pay Carroll's $950 per month. The action of Defendants and Intervenors and Rainbow P & C, in making no payments to Carroll's, belie the contention the option had been exercised.

The evidentiary material established there was no genuine issue concerning the relevant facts. The trial court correctly declared the legal effect of the documents and actions so established. The findings and judgment of the trial court are supported by the evidence. Defendants and Intervenors' points I and II are denied and the judgment is affirmed.

FLANIGAN, C.J., and MONTGOMERY, J., concur.

