**Loretta A. KELTNER, Plaintiff–Appellant,**

v.

**Gary H. SOWELL and Pamela K. Sowell, Defendants–Respondents.**

No. 20426.

Missouri Court of Appeals, Southern District, Division One.

July 19, 1996.

---

Bradford E. Ellsworth, Brian G. Ellsworth, Ellsworth & Ellsworth, Cabool, for plaintiff-appellant.

R. David Ray, Ray & Garrett, West Plains, for defendants-respondents.

GARRISON, Judge.

This is a declaratory judgment action involving a lease agreement with an option to purchase. The issues on this appeal are whether Respondents (Defendants) exercised the option to purchase before the agreement was automatically terminated because a house on the property was destroyed by fire, and whether they were entitled to any of the insurance proceeds from that loss. The trial court held that the option had been exercised, that Appellant (Plaintiff) is required to proceed with the sale of the property to Defendants, and that Defendants are entitled to the insurance proceeds after the purchase price of the property is deducted and paid to Plaintiff. We reverse.

The option was part of a "Lease Agreement With Option To Purchase" (the Agreement) dated February 4, 1992 between Plaintiff, as lessor, and Defendants, as lessees.[1] Included in its provisions were the following:

5. *Destruction of Premises.* It is agreed by and between the parties hereto that if the leased premises be totally destroyed or rendered untenantable by fire

or other disaster or casualty the rent on the premises shall abate and this Lease Agreement shall terminate as of the date of the fire, disaster or casualty.

. . . .

8. *Option to Purchase.* Within any time during the term of this Lease Agreement prior to the last ninety (90) days thereof, provided it has not been sooner terminated under the provisions herein, LESSEE shall have the option and right to purchase the demised premises for an amount equal to Ninety-five Thousand Dollars ($95,000.00) plus all remaining lease payments due under this Lease Agreement. Said amount shall be due and payable within sixty (60) days after exercise of the option herein granted.

Notice of the election to exercise the option herein granted shall be given by LESSEE in writing by certified or registered mail addressed to LESSOR at 703 Rice Court, Nixa MO 65714.

During the term of the lease, Plaintiff contacted Defendant Gary Sowell after learning that he and his wife had listed the property for sale. Plaintiff's written memo of that conversation, dated June 21, 1994, is as follows:

Gary called me back today. I told him I did want the place back. He said I would have to pay him back his payments to me plus what he has done to the place. He said he and Pam would talk tonight and decide what they would have to have for me to get it back. I told him I would never agree to me signing the place over to him and set [sic] there and watch him selling it to someone else. He said that was fine—he would borrow the money and pay me my $95,000 now.

I called Gary today because Gobble Real Estate is still trying to sell home and 80 acres.

Nothing further was done regarding the matter prior to June 27, 1994, when fire destroyed the house on the property. On July

1. The property was owned by Plaintiff but the Agreement named both Plaintiff and her husband as lessors. It was signed by her husband but not by Plaintiff. The parties seem to agree that

Plaintiff knew of the Agreement and ratified it. No issue is made of the fact that she did not sign it.

14, 1994, Plaintiff's attorney wrote a letter to Defendants, referring to paragraphs 5 and 8 of the Agreement, and informing them that the Agreement, including the option, was terminated as of June 27 when the fire occurred.

The house was insured under a policy carried by Defendants. The proceeds of that policy ($123,800) were paid to Plaintiff, her attorney, and Defendants. By agreement of the parties, those proceeds were placed in a bank account in all of their names. Plaintiff then filed this suit to determine the rights of the parties in the property and also in the insurance proceeds. The trial court's judgment included the following:

> Defendants failed to give Plaintiff written notice of their election to exercise the option to purchase prior to the destruction of the premises by fire; however, Plaintiff by her actions satisfied the contractual relationship with the Defendants and was aware that Defendants intended to exercise the option to purchase said property under the terms of the lease; Plaintiff in Ex. A refers to "pay me my $95,000.00 now"; that Plaintiff had notice of the Defendants['] election to exercise the option to purchase; that Plaintiff is entitled to $95,000.00 of the insurance proceeds as the sale price of the property; that Defendants are entitled to have Plaintiff fulfill the transfer of title provisions of the lease and conveyance of the property to them in accordance with said provisions and have the balance of said proceeds paid to them.

On this appeal, Plaintiff contends that the trial court erred because Defendants had not given a written notice exercising the option as required by the Agreement before the fire terminated both the lease and option.[2] Because she contends that the lease was terminated by the fire, she also argues that she was entitled to all of the insurance proceeds.

■ In reviewing a declaratory judgment, we are to sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *State Farm Mut. Auto. Ins. Co. v. Flanary,* 879 S.W.2d 720, 721 (Mo.App.S.D. 1994).

■ In her first point on appeal, Plaintiff contends that the judgment requiring her to convey the property to Defendants was a misapplication of the law. In support, she argues that the Agreement, which contained the option to purchase, terminated automatically when the house burned without the option having been exercised by a written notice. As a result, she contends, Defendants have no right to require a conveyance of the property to them. She further argues that she had not waived the requirement of a written notice, and that any oral discussions between the parties were ineffective as an exercise of the option. Defendants acknowledge that no written notice exercising the option was given, but argue that the necessity of such a notice was waived.

■ An option to purchase has been described as follows:

> An option is unilateral and does not ripen into a contract of purchase and sale until exercised by the optionee. Until the optionee accepts there is no enforceable contract, the option being in effect but an offer on the part of the optionor, although an offer binding on the optionor by virtue of the consideration paid for the option until the time stipulated for the acceptance of the offer has expired.

*Carroll's Warehouse Paint Stores, Inc. v. Rainbow Paint & Coatings, Inc.,* 824 S.W.2d 147, 151 (Mo.App.S.D.1992) (quoting *Lusco v. Tavitian,* 296 S.W.2d 14, 16 (Mo.1956)). It is clear that acceptance of an option must be *unequivocal and certain. Id.*

■ An option may require a written notice of acceptance. *Id.* In the instant case, the Agreement provided that notice of the election to exercise the option "shall be given

---

2. There is no issue on this appeal, and we do not decide, whether the destruction of the house resulted in the entire Agreement being terminated pursuant to paragraph 5 ("if the leased premises be totally destroyed or rendered untenantable by fire ... this Lease Agreement shall terminate as of the date of the fire") when the Agreement included 80 acres in addition to the house. Both parties apparently agree that the fire terminated the Agreement, and we will assume the same for the purposes of this opinion.

by LESSEE in writing by certified or registered mail . . . ." The requirement of a written notice in a contract may be waived, however, by an oral agreement of the parties or by their conduct. *Pilla v. Estate of Pilla*, 689 S.W.2d 727, 730 (Mo.App.E.D.1985). For instance, in *Gilmartin Bros., Inc. v. Kern*, 916 S.W.2d 324, 329 (Mo.App.E.D. 1995), the court found that the parties, through prior dealings, had waived strict compliance with the contractual requirement of a written notice.

Waiver of rights under a contract has been defined as follows:

"Waiver" has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of party showing such purpose, and so consistent with intention to waive that no other reasonable explanation is possible.

*Carroll's Warehouse Paint Stores, Inc. v. Rainbow Paint & Coatings, Inc.*, 824 S.W.2d at 151–52 (quoting from *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo.1969)).

In this case, there was no evidence which would support a finding of "waiver" by Plaintiff. In fact, the trial court did not purport to make any such finding. With regard to this issue, we also note that, although the Agreement required Plaintiff to provide Defendants with a title insurance commitment if the option was exercised, she took no steps to do so after any of the conversations with Gary Sowell.

Defendants also argue that a waiver may occur by anticipatory repudiation. They cite *Mar–Kay Plastics, Inc. v. Alco Standard Corp.*, 825 S.W.2d 381, 384 (Mo.App.W.D. 1992), in which the court stated that Missouri recognizes the doctrine of anticipatory breach by repudiation, which occurs when there is a manifestation, by words or conduct, of a positive intention not to perform. They also cite *Hillis v. Blanchard*, 433 S.W.2d 276, 279 (Mo. banc 1968), for the proposition that one who hinders performance by the other party may not avail himself of the nonperformance which he in-

duced or occasioned; and *Sassenrath v. Sassenrath*, 657 S.W.2d 671, 674 (Mo.App.E.D. 1983), where the court said that "[w]here a defendant prevents the performance of a condition of a contract, the condition is excused." As we interpret Defendants' argument, they contend that Plaintiff's comments constituted an anticipatory repudiation of the contract, thereby excusing them from being required to give a notice exercising the option.

This court has stated, however, that if a promisor repudiates his obligation before the time for performance arrives, the promisee has the option to treat the agreement as broken and at once bring an action for recovery of his damages, or treat the repudiation as inoperative and await the time when the agreement is to be performed and then hold the promisor for all the consequences of nonperformance. *Reed v. Reberry*, 883 S.W.2d 59, 64 (Mo.App.S.D.1994). It is apparent in the instant case that Defendants did not treat the Agreement as being broken by Plaintiff's statements. In response, Gary Sowell stated that he would borrow the money and pay Plaintiff $95,000.

The statements were obviously treated as inoperative. As a result, the contract was kept alive for the benefit of Plaintiff as well as Defendants; Defendants remained subject to all of their own obligations and liabilities under the contract; and it enabled Plaintiff to not only complete the contract if she chose to do so, notwithstanding any previous repudiation of it, but also to take advantage of any supervening circumstance which would justify her in declining to complete it. *Carr v. Carr*, 751 S.W.2d 781, 786 (Mo.App.S.D. 1988). It is apparent that even if Plaintiff's comments constituted an anticipatory repudiation, Defendants, by not electing to treat the contract as ended, kept the contract alive subject to the effect of intervening events. Significantly, they gave no written notice exercising the option, even after Plaintiff's comments. In this case, the intervening event was the fire which, as the parties apparently agree, terminated the Agreement. The concept of anticipatory repudiation does not, therefore, aid Defendants.

The trial court found that "Plaintiff by her actions satisfied the contractual relationship with the Defendants and was aware that Defendants intended to exercise the option to purchase said property under the terms of the lease; Plaintiff in Ex. A refers to 'pay me my $95,000 now'; [and] that Plaintiff had notice of the Defendants['] election to exercise the option to purchase." There was no finding of a waiver of the requirement of written notice, and even if there had been, there was no evidence from which the trial court could have found such a waiver or an unequivocal and certain notice to Plaintiff of the exercise of the option. Evidence of "intent" to do so at some future time is insufficient.

We conclude that the trial court erred in holding that Defendants had effectively exercised the option to purchase. In this respect the judgment must be reversed.

In her second point, Plaintiff contends that the trial court also erred in awarding any of the insurance proceeds to Defendants. She argues that because Defendants' interest in the property ceased with the fire, they had no legal or equitable interest in the property which would entitle them to any of the proceeds. In this regard, the parties seem to agree that resolution of this point depends on our decision on Plaintiff's first point. Having decided, in Point I, that Defendants had not effectively exercised the option, we also reverse that portion of the judgment by which the trial court held that Defendants were entitled to the insurance proceeds after deduction of the purchase price.

We recognize that the result we reach in this case is a harsh one, but it is dictated by the prevailing case law in this state, as well as the record and issues submitted to us. The judgment for Defendants is, therefore, reversed and the case is remanded to the trial court for entry of a judgment for Plaintiff consistent with this opinion.

MONTGOMERY, P.J., and BARNEY, J., concur.