ELECTRIC SECRET SERVICE COMPANY *et al., Appellants,*
v. GILL-ALEXANDER ELECTRIC MANUFACT-
URING COMPANY.

### Division One, November 26, 1894.

1. **Jurisdiction:** PRACTICE. It is always proper for the court to satisfy itself of its jurisdiction in a given case, whether counsel raise that question or not.

2. **Patent Rights:** EQUITY: SPECIFIC PERFORMANCE. A court of equity may properly compel specific performance of contracts to transfer patent rights.

3. **Contract:** EQUITY: SPECIFIC PERFORMANCE. Equity requires substantial compliance with a contract sought to be specifically enforced; and where the party seeking such relief appears to have inexcusably failed to observe the contract on his own part, a court of equity will not decree specific performance at his instance.

4. ———: ———. It is a maxim of equity that, he who asks the benefit must bear the burdens of an agreement.

*Appeal from Jackson Circuit Court.*

AFFIRMED.

The plaintiffs sued for specific performance of contract for the transfer of patent rights.

There was judgment on the circuit for defendants, and plaintiffs appealed.

The finding of facts and decree of the trial court, mentioned in the opinion, are as follows:

"Now at this day, this cause coming on to be heard, and the court, having fully heard and considered the pleadings and evidence of the parties and the arguments of counsel, doth find the facts as follows:

"That on the tenth day of March, 1885, there was issued certain letters patent of the United States, from the patent office of the United States, number 313720, and called 'An Improvement in Automatic Electric Signal-Controlling Apparatus' to the defendant Edwin R. Gill, Jr., one half interest; to plaintiff John T. Russell, one fourth interest; to plaintiff James M. Chaney, one eighth interest, and to one Wm. A. Simmington one eighth interest, then thereafter said Chaney became the owner of said Wm. A. Simmington's one eighth interest, by assignment on the face of the said patent.

"That by a contract dated October 25, 1886, said J. T. Russell and E. R. Gill, Jr., granted to said James M. Chaney the exclusive right and privilege of selling at any time within ten months from the date last aforesaid all the right, title and interest of said Russell and Gill to said patent right, upon the condition that if a sale of said patent right should be made within said ten months said Russell and Gill were to receive in full payment of all their right, title and interest in said patent the sum of seven thousand, five hundred (7,500) dollars; that is, the said Russell was to receive twenty-five hundred (2,500) dollars; and the said Gill five thousand (5,000) dollars, and the said Chaney to receive the remainder of the sum for which said patent right might be sold: that said Russell and Gill were to make a good and valid assignment of all their said right and title to said patent right upon the. payment to them of said sum of $7,500; that said Chaney was, at his own expense, to make diligent endeavor to effect a sale of said patent right, within the specified time; and in case such sale was effected, to pay to said Russell and Gill said $7,500 and in case said sale was not effected in the time specified, said agreement was to be void and of no further effect, and the rights of the parties to be as though no agreement had been made.

"That on the twenty-first day of December, 1886, said J. M. Chaney entered into an agreement with the plaintiff A. W. Jones, by which said A. W. Jones undertook to and engaged either to sell for cash said patent right to some individual parties or corporation, or to organize a company and dispose of said patent for part cash and part stock of said company, or to organize a company to sell a sufficient amount of stock of said company for the purpose of manufacturing, operating, or selling said patent or device; said Chaney

to be at no expense thereby, conditional that if said Jones did not effect a satisfactory sale or disposition of said patent or device within ten months from the twenty-fifth day of October, 1886, the said agreement to be void; and said contract of October, 1886, was made part of the contract last aforesaid, and said Jones took the place of Chaney under said contract of October 25, 1886. This agreement was approved by said Russell and Gill.

"That said E. R. Gill, Jr., in the month of December, 1886, and January, 1887, proceeded to construct, at the request of said A. W. Jones, and did construct, three machines, fully illustrating the workings of said patent devices.

"That, on the twenty-fifth day of March, 1887, an agreement was entered into between said A. W. Jones and said E. R. Gill, Jr., by which said Gill agreed to make, within the shortest time possible, a complete and practical working machine, known as the Automatic Electric Signal-Controlling Apparatus, and upon the completion of said machine, and when its workings had demonstrated that it would do what the said Gill claimed it would do, to give to said A. W. Jones his time and assistance in promoting and consummating the sale of said apparatus, or the organization of a stock company for the purpose of manufacturing, operating or selling the said patent device; that the said A. W. Jones, on his part, agreed to employ said Gill for said purposes, and to pay him a salary of $50 per month, in advance, commencing at said March 15, 1887; his board and lodging wherever he might be acting under, or awaiting the instructions of, said A. W. Jones, and his railroad and traveling expenses to and from all points, to which he might be directed to go, and back to Kansas City; and in case a stock company should be formed for the purpose of manufacturing,

operating or selling said apparatus, the said A. W. Jones should cause to be issued to said Gill fifty shares of the capital stock of such company so formed, fully paid up and non-assessable, and of the par value of one hundred dollars per share; all to be done without any costs to said Gill; that should said A. W. Jones succeed in forming such stock company, and fail to issue, or cause to be issued, to said Gill the said fifty shares of said stock, then in that case the said A. W. Jones agreed to pay the said Gill the sum of $5,000 in lieu thereof; that this contract provided that as far as consideration is concerned it was to have nothing, whatever, to do with the contract of Chaney, of date October 25, 1887, and the $5,000 in stock or money to be paid to Gill by the said Jones was no part of the $5,000 in money to be paid to Gill under the contract of October 25, 1886, but was, in addition thereto; the term of the employment of said Gill under this contract, was limited by its terms to the ten months named in said contract of October 25, 1886, and was to expire with that contract unless sooner forfeited by said Jones, he finding it impossible to utilize said machinery by sale or the formation of a company as in said contract provided.

"That on the twentieth day of August, 1887, said E. R. Gill extended in writing the contract between himself, James M. Chaney and John T. Russell, of the date of October 26, 1886, for the period of sixty days from August 20, 1887, and thereafter for any longer period of time which the said A. W. Jones might, in his judgment and at his option, deem necessary.

"The court finds that E. R. Gill proceeded to construct the machines and apparatus mentioned in said contracts according to the terms and conditions thereof, and to exhibit under the directions of said A. W. Jones, in Kansas City, and in various cities of the east.

That said A. W. Jones exerted himself to sell and dispose of said patent devices and letters patent at the various places where the said Gill, under his directions, exhibited the said machines and apparatus.

"That on the tenth day of October, 1888, said A. W. Jones, together with the plaintiff B. F. Jones and E. L. Martin, whom he had theretofore associated with himself in this enterprise, organized under the laws of the state of Missouri a corporation under the name of the Western Electric Lock Company, with an authorized capital stock of $100,000; that the articles of incorporation of said company stated that it had a fully paid-up capital of $100,000 in lawful money of the United States; that the purposes for which said corporation was formed, were to manufacture, sell and deal in the Gill Electric Combination Lock, in all its various applications and uses in connection with railroads, telegraph, telephone, military and naval purposes, police and fire departments, safes and all other ends and purposes to which the same could be utilized, to do the same things with all the improvements which may be made on said locks, or any other electric lock or appliance used for the purpose of a lock which said corporation may desire, to take, hold, sell and assign all letters patent concerning the same; to grant licenses or make other contracts for the use and disposition of said locks or other appliances, and to collect royalty or other compensation therefrom.  The said corporation to have all the powers granted to similar corporations under the laws of the state, and especially those which are necessary and incidental to the proper carrying out of the purposes for which the same is formed.

"That of the capital stock of said corporation said B. F. Jones subscribed for three hundred and thirty-four shares, said E. L. Martin three hundred and

thirty-three, and said A. W. Jones three hundred and thirty-three; said shares being of the par value of $100 each.

"The court finds from the evidence in addition to the said articles of incorporation that the same was organized for the purpose and object of acquiring the absolute title to all the letters patent pertaining to said Gill Electric Combination Lock and said Automatic Signal-Controlling Apparatus, and especially to said letters patent number 313720, and all improvements thereon; and for the purpose of manufacturing, operating and selling said apparatus; that the board of directors of said corporation for the first year were A. W. Jones, B. F. Jones and E. L. Martin, and that the said directors, on the———day of October, 1888, met and elected A. W. Jones, president, E. L. Martin, vice-president and B. F. Jones secretary and treasurer, and on the———day of October, 1888, the stockholders of said corporation adopted a code of by-laws.

"That afterwards the name of said corporation was changed to the Gill Electric Combination Lock Company; that shortly after the organization of said corporation said directors A. W. Jones, B. F. Jones and E. L. Martin, requested said E. R. Gill to execute a written assignment, selling, transferring and assigning to said Gill Electric Combination Lock Company all his right, title and interest in and to said electric device and said letters patent number 313720, together with all improvements subsequently made as well as all new patent devices applicable thereto then applied for and also all improvements thereon or new devices applicable thereto which might thereafter be invented by said E. R. Gill, and guaranteeing therein to warrant and defend the same against all infringements unto the said company, and to place said written assignment in the hands of a trustees to be held by him, the said trustee, for the

period of six months, and if at any time within the said six months said Gill Electric Combination Lock Company paid said Gill the sum of $5,000 in money and $5,000 in stock at the par value of $100 per share, then said corporation should be entitled to receive said assignment; but if said corporation failed within said period to pay said Gill the cash and stock as aforesaid, then said assignment was to be null and void; that said E. R. Gill refused to make said assignment on such terms and conditions and demanded that he be paid said sum of $5,000 and said stock or its value at the date he should make his said conveyance to said company, and offered to convey all his right, title and interest in said letters patent to said corporation upon the payment to him of said money and stock aforesaid, and furthermore offered to make said payments contingent upon a successful practical demonstration of the working of said apparatus and device upon a railroad. That said A. W. Jones, B. F. Jones and E. L. Martin declined to accept said proposition or pay said money and issue said stock as demanded by said E. R. Gill.

"The court further finds that said B. F. Jones and said Chaney, thereupon declared to Alexander and others, that they would have nothing more to do with Gill; that they were glad to be rid of him; and said B. F. Jones, A. W. Jones and E. L. Martin then employed one A. A. Hatch to take charge of and exploit said electrical device of said Gill and with improvements and additions thereto made by said Hatch, had the same patented in the name of said Hatch and sold and assigned the said letters patent to the Electric Secret Service Company, one of the plaintiffs herein, all without the knowledge or consent of the said Gill; that afterwards the said Gill, Alexander and the two Gillhams, about the first of March, 1889, organized the defendant corporation, the Gill–Alexander Electri-

cal Manufacturing Company, and that said Gill's interest in his patents was assigned and transferred by him to said company.

"That plaintiffs made no demand on defendants concerning said letters patent until the filing of this suit on February 26, 1891.

"The court further finds that said Gill performed all the obligations on his part under the contract of March 15, 1887, between him and A. W. Jones, and was ready and willing to perform the same until the said A. W. Jones, E. L. Martin and B. F. Jones, organized the said Western Electric Lock Company, and divided all the capital stock, $100,000 between themselves, neither offering said E. R. Gill stock in the same of the par value of $5,000, nor offering to pay him $5,000 in cash, but requiring him to enter into another contract entirely differing in its material provisions from that of the fifteenth of March, 1887, which he refused to do.

"The court further finds that Alexander, Gill, and Robert Gillham, knew of the contract relations between Jones and Gill; that there is no evidence showing that M. C. Gillham had any such knowledge.

"On the foregoing facts the court is of the opinion that complainants are not entitled to any relief in equity; and it is therefore ordered, adjudged and decreed that plaintiffs take nothing herein; that the temporary injunction heretofore granted be and the same is hereby dissolved; that plaintiffs' petition be dismissed, and that defendants recover from plaintiffs their costs in this cause incurred and expended, and have therefor execution."

*C. O. Tichenor* for appellants.

(1) Did Gill have the right to abandon his contract, as he did? He went to work under the contract of Chaney

& Jones of December 21, 1886. He agreed in writing
to do his part. Long before the time expired he struck
and quit. He forced Jones into a new contract where-
by he was compelled to pay him, in addition to his
expenses, $50 per month in advance, and also a sum
equal to that for which Gill was already bound to sell
by the contract of October 25, 1886. He afterward
agreed to continue work under these terms for any
longer period of time which Jones might, in his judg-
ment and at his option, deem necessary. Jones and
his associates, under this arrangement, and in the best
of faith, paid out large sums of money. Gill received
money to pay expenses for patents for improvements;
he drew money for his expenses and salary up to De-
cember 1, 1888, when he suddenly quit, after serving a
notice signed by his attorney, directed to the corpora-
tion, demanding that if the contract price and the
other sum equal to it, were not paid within a week he
would abandon his contract. In *Mastin v. Grimes*, 88
Mo. 485, the contract was unilateral, yet the court says:
"And even if by the express terms of the contract a
day of payment be fixed and time declared to be of the
essence of the contract, still this is no bar to the time
of payment being postponed, or to this essential ele-
ment being altogether waived. And if after the expi-
ration of the time limited the parties continue to deal
together or treat the contract as still existing, this
amounts to a waiver." The contract was dated April
13, and on September 5 the owner served notice, that, if
the purchaser did not pay the money within five days,
the contract would be terminated. This court held
that the contract was not ended by the notice, and the
cases on the subject are discussed at length. Of course,
those invoking this principle must show that they have
been acting in good faith, and there must be no unrea-
sonable delay. But there can be no such questions

raised in this case.   Gill, himself, swears that he can not tell one single thing that Jones, Martin and Jones left undone which they should have done; he can not even ·suggest anything which, if done, would have resulted in the sale of this patent.   They displayed wonderful activity.   The manner in which they spent their money in the venture (amounting to more than Gill thought his interest worth, as shown by the Chaney contract) was even  rash and unbusinesslike.   Should it be necessary to fortify *Mastin v. Grimes*, we refer to *Lanson v. Hogan*, 93 N. Y. 44.   (2) Again, how could Gill rescind, without tendering  back  the  money  received?   He was paid for work  to perfect  a machine. A patent is unmarketable, unless it is proven to be practicable.   The work was done to improve his own property, if he is not compelled to sell.   This expense gave it value.   The two inventions as to improvements were made during his employment.   Even if there is nothing else, Jones, Martin and Jones paid $125 for the expenses of the issue of patents for these inventions.   At least this should have been tendered back. In *Mastin v. Grimes* the amount which the defendant had was but $10, yet the court held it ought to have been returned, saying:   "And it matters not that the amount was small, the principle involved is not affected thereby."   (3) The Gill-Alexander Company had notice of the rights of plaintiff corporation, because all of the original incorporators knew of the agreement between Gill and Jones.   1 Morawetz on Private Corporations, sec. 1.

*Warner, Dean, Gibson & McLeod* and *Gates & Wallace* for respondents.

The question in this case is as to the right of the plaintiffs to enforce specific performance of the Chaney

and Jones contracts in a court of equity.   Did A. W. Jones and those associated with him conscientiously and in good faith, at all times, keep and perform the covenants and agreements on their part?   Or did Gill abandon his contract without cause?   The question plainly stated is, which broke the agreement, Gill or Jones.   It is through the righteous and perfect performance of A. W. Jones, through his faithful fulfillment of his covenants, that the plaintiffs claim their rights in a court of conscience.   It is shown clearly by the evidence that Jones did not comply with his first agreement with Gill, the oral agreement which preceded the contract of March 15, 1887. He refused to give him the promised suit of clothes. He refused to take him on the contemplated trip to New York.   He attemptly secretly to rob him of his invention, and finally threatened him with criminal prosecution.   It was in this manner, we suppose, that this youth forced the "negotiator and promoter," who was also lawyer, into the contract of March 15, 1887, as contended in the plaintiffs' brief.   Nor did Jones comply with the written contract made with Gill of March 15, 1887.   Gill became entitled to his $5,000 in stock and $5,000 in money under the Chaney and Jones contracts. The proposition made by Gill after they had refused to comply with the agreements, and after they had submitted to him their proposition, which he declined, upon which counsel for plaintiff bases his case in this court was nothing more or less than a final attempt on the part of Gill to get Jones and his associates to perform the contract, and proves the good faith of Gill and his readiness to keep his side of the agreement. Instead of being a notice to terminate a contract, which the other parties were in good faith keeping and performing on their side, it was a final overture made to the other side after they had broken the agreement.

The time given the other parties in which to accept this overture is of no importance, as it was declined on the next day after it was submitted. *First.* The bill does not offer to do equity. *Second.* The complainant's assignors deliberately refused to carry out their contract with Gill, and thereby lost all rights thereunder. *Third.* Complainant's assignors forfeited their rights by subsequently abandoning their contract with Gill. *Fourth.* The plaintiff could not, on its own showing, make such a tender as equity requires. *Fifth.* The contract sought to be enforced is not mutually obligatory in equity. Fry on Spec. Perf., 133, and cases cited; *Glass v. Rowe*, 103 Mo. 514; *Marble Co. v. Ripley*, 10 Wall. 339.

BARCLAY, J.—This is a suit in equity to enforce specific performance of certain agreements for the transfer of rights to patents for an invention. The petition also seeks to cancel prior transfers of such rights, already made by some of the defendants, and seeks to enjoin any further transfers of the interests to which plaintiffs assert title.

The plaintiffs are the Electric Secret Service Company, John T. Russell, James M. Chaney, Alfred W. Jones, Edward L. Martin and Benjamin F. Jones.

The defendants are the Gill–Alexander Electric Manufacturing Company, Edwin R. Gill, Jr., Robert Gillham, M. C. Gillham, and William W. Alexander.

The pleadings need not be given. The positions taken by the several parties to the controversy will sufficiently appear otherwise.

The finding and decree of the learned judge who heard the cause on the circuit furnish a general outline of the litigation, to which we shall add such further particulars as we may consider worthy of mention in developing the grounds for the conclusion reached here.

We shall not enter into the testimony in detail; but shall content ourselves with stating our deductions from it, together with the rules of law which seem applicable.

In 1884, Edwin R. Gill, Jr., then about eighteen years of age, a workman in his father's tinshop at Pleasant Hill, Missouri, invented a certain mechanism applicable to telegraph or telephone lines, which was afterwards patented as an "Automatic Electric Signal-Controlling Apparatus." Being, at the outset, without adequate means to perfect his discovery or to introduce it, Gill made a series of contracts with various persons in order to secure such means.

Those contracts form the groundwork of this suit. Under them, plaintiffs claim title to one half the patent rights granted to Gill, the inventor, and his assigns. The defendants deny that claim.

The principal defense, which the trial court sustained, is that plaintiffs do not show such a performance of the agreements on their part, as would warrant a court of equity to grant the relief they invoke.

The substance of these agreements appears in the finding of the trial judge.

It is evident that the written contract on March 15, 1887, has the most vital bearing on the issue of the present suit.

The parties to it were Gill and Jones. The former agreed to a number of stipulations, concerning the transfer of his interest in the patent device, and the giving of his efforts and time to its perfection, etc. The party of the second part, Mr. Jones (through whom the plaintiffs claim the right to specific performance), entered into the following agreements, by the terms of the writing referred to, viz:

"The said party of the second part hereby employs the said party of the first part for the purposes and for

the objects hereinbefore named and agrees to pay him $50 per month in advance, commencing from the date of this contract, his board and lodging, wherever he may be, acting under or awaiting the instructions of the said party of the second part, and his railroad and traveling expenses to and from all points to which he may be directed to go, and back to Kansas City, should his employment cease; as a further consideration for doing all that the party of the first part agrees herein to do, the said party of the second part agrees and binds himself in case a stock company is formed for the purpose of manufacturing, operating or selling the "Automatic Electric Signal-Controlling Apparatus," to cause to be issued to the party of the first part fifty shares of the capital stock of any such company so formed, fully paid up and non-assessable, and of the par value of $100 a share, all to be done without any cost whatever to the said party of the first part; but should the said party of the second part not form any such company, but on the contrary sell the said patent device to an individual or number of them, or to any corporation for a sum of money or its equivalent amounting to over $25,000, then in that case the said party of the second part hereby agrees and binds himself to pay or cause to be paid to the party of the first part, his heirs or assigns, ten per cent. of all sums over said $25,000 in lieu of the stock above referred to, until such percentage shall equal the sum of $5,000, it being understood that the percentage to be so paid shall not exceed the sum of $5,000.   *   *   *   Should the party of the second part succeed in forming a stock company and fail to issue or cause to be issued the said fifty shares of stock as herein provided to the said party of the first part, then in that case the party of the second part hereby agrees and binds himself to pay to the party of the first part the sum of $5,000 in lieu thereof.

This contract, so far as the consideration is concerned, has nothing whatever to do with any others the said Gill has heretofore made with one James M. Chaney, and the $5,000 to be paid to Gill by the said Jones is no part of the $5,000 the said James M. Chaney is to pay to the said Gill under his contract with him, dated October 25, 1886, but the time of employment in this contract is limited to the term of ten months named in said contract between the said Gill and James M. Chaney and expires with that contract unless sooner forfeited by the party of the second part, he finding it impossible to utilize said machine by said sale or the formation of said company as herein anticipated."

From the facts found by the learned circuit judge, touching the organization by Jones and his associates of the Western Electric Lock Company, and the subsequent dealings with Gill, it is clear that the agreements above quoted were not performed.

The principal facts on which that conclusion rests are substantially undisputed.

Gill appears to have been entirely willing and ready to convey his patents to the Missouri corporation organized by Mr. Jones; but Gill firmly insisted on the payment to him of the stock and money stipulated to be paid, as declared by the foregoing agreement.

Gill had the undoubted right to demand the performance of those conditions.

The subsequent negotiations do not, in our opinion, amount to a waiver of his right to require performance of the conditions on which the transfer of his interest in the patent was contingent.

The law applicable to such a case is not seriously in dispute.

1. Though no question has been raised by counsel, it is proper for the court to satisfy itself of its power or

jurisdiction to act upon any given state of facts that may be presented for its cognizance.

Though contracts for the sale of rights under patents may affect only personal property, we have no doubt that equity may properly take jurisdiction of them in such a proceeding as this; and, on a sufficient showing, decree specific performance.

The principal footing of such jurisdiction is the obvious inadequacy of the redress which an ordinary action at law for damages would afford, as applied to such property, in event of refusal to comply with an agreement for its sale.

Rights acquired under letters patent for inventions are of such peculiar nature that they are justly considered proper subject-matter for suits for specific performance. *Corbin v. Tracy* (1867), 34 Conn. 325; *Binney v. Annan* (1871), 107 Mass. 94.

2. Strict and literal performance of all the conditions of a contract is not invariably an essential prerequisite to a decree for specific performance.

Equity looks at the substance of transactions, and regards the spirit of an obligation rather than its mere form. So all that is generally demanded in equity is a substantial compliance with the agreement, sought to be specifically enforced, on the part of him who asks the aid of equity to give it effect.

But where the facts show that the plaintiff has wholly failed to meet the substantial terms of the very agreement on which he relies, he can not complain if a court of equity leaves him where he has placed himself. He can not be allowed to seize the benefits of an agreement when he has discarded its burdens. This is a plain rule of fairness, that has become a maxim in this branch of the law.

An obligation worthy of exact enforcement in a court of equity should possess at least that complete-

ness which mutuality creates. If one party has cast it aside, he can not justly be permitted to use the court of equity to vitalize the obligation as a coercive force to control the conduct of the other party to the agreement.

After a careful review of the facts of the case in hand we are satisfied that the findings of the learned trial judge are correct in all material respects. We affirm the judgment. BLACK, C. J., and BRACE and MACFARLANE, JJ., concur.