H. B. PARKHURST, Appellant, v. THE LEBANON PUBLISHING COMPANY, a Corporation.—No. 40180.—204 S. W. (2d) 241.

Division One, September 8, 1947.

*Claude T. Wood* and *Harold T. Lincoln* for appellant.

*Paul J. Dillard* and *Breuer & Northern* for respondent.

936

DALTON, C.—Action in ejectment for described real estate in Lebanon, Laclede County, with a cross action, which the trial court construed to be an action in equity to redeem the property from an equitable mortgage. All issues were tried to the court and found for defendant. Plaintiff has appealed.

The petition in ejectment, in usual form, alleged that plaintiff became legally entitled to possession on February 17, 1946. The rental value was alleged to be $100 per month, and this was admitted by defendant's answer. Other allegations were denied.

In the cross petition defendant alleged the purchase of the property from plaintiff under the terms of a written contract; that installments had been paid on the purchase price; that neither plaintiff nor defendant had strictly complied with the terms of the contract; that defendant's default was unintentional and due to oversight, inadvertence and mistake; and that plaintiff had undertaken to declare a forfeiture and recover possession of the premises. Defendant prayed judgment denying plaintiff's right to forfeit the contract or to recover possession, and further prayed judgment requiring plaintiff to accept the balance due under the contract and to convey to defendant.

Certain allegations of the cross petition were expressly admitted, to wit, "that on the — day of ————, 1935, the plaintiff was the owner and in possession" of the described real estate; that an agreement was entered into between plaintiff and defendant "whereby plaintiff agreed to erect on the premises the building now occupied by defendant and to lease said building to defendant for a term of 10 years and to give to defendant an option to buy the building and

premises at a fixed price at the termination of the lease"; that, in line with this agreement a building, specially designed for defendant's use, was erected by plaintiff, and the lease was duly executed; that defendant thereafter took possession of the building and premises under its lease and has at all times since occupied the same; that Fred W. May, hereinafter mentioned, was called into the United States Army in May, 1941; "that upon his entering into active duty with the army the said Fred W. May was ordered from his home and business and later into foreign service" and was away from his business and home at all times mentioned herein; "that, while Fred W. May was in foreign service in the far East, the time drew near for defendant to exercise its option taken from the plaintiff for the purchase of the building and grounds now in controversy; that said Virginia B. May, wife of Fred W. May, notified the plaintiff that the defendant corporation, of which she was the acting president, chose to exercise its option and buy the property at the figure named in the lease and option taken in 1935; that as a result of such notice, a contract of sale was prepared by plaintiff's attorney, and the said Virginia B. May and Virginia F. McKesson, both inexperienced in business affairs, . . . signed said contract on behalf of the defendant corporation" as follows (legal description and signatures omitted) :

" 'Sale Contract

" 'This article of agreement made and entered into this the 1st day of November, 1945, by and between H. B. Parkhurst, a Bachelor, party of the first part and The Lebanon Publishing Company, a corporation, party of the second part.

" 'WITNESSETH, That the said party of the first part has on this date bargained and sold to the party of the second party the following Lots: (described) and subject to taxes payable in 1946 and thereafter.

" 'The consideration to be paid therefor is the sum of $6200.00 and is to be paid as follows: $250.00 cash on this date and the receipt of same is hereby acknowledged. $50.00 on December 1, 1945, and $50.00 on the first day of each month thereafter until the whole amount is fully paid, with the privilege of paying any multiple of $50.00 at any monthly payment. All deferred payments are to bear interest from date at the rate of five percent per annum, payable semiannually.

" 'The second party also agrees to keep all the current and special taxes paid for the year 1946 and each year thereafter, and to keep the improvements insured against fire and extended coverage in some reliable insurance company and for a sum equal to the balance due, with a clause on said policy that in case of a loss that each party will collect according to his or its respective interests and during the life of this contract. Also agree to keep the improvements in good condition.

" 'The first party also agrees to furnish the second party an abstract covering the above Lots which must show a good and marketable title to said Lots in the first party.

" 'For and in consideration of the above amount and so paid, the first party has on this date executed a General Warranty Deed to the second party for said Lots and said deed, a copy of this contract, and the abstract is deposited in Escrow in the State Bank of Lebanon, Missouri, with instruction to the officers of said bank to deliver said deed and abstract to the second party when all payments have been fully made, including the interest on the deferred payments and on the advise of both first and second parties.

" 'Should the second party fail or refuse, or some one for it, fail or refuse to make the monthly payments on due date or within fifteen days after due date, or pay the interest semi-annually, or to keep the improvements insured as above agreed then, and in that event, it shall forfeit to the first party the amount so paid at that time, the contract shall become null and void and for naught held, and the deed and abstract shall be delivered to the first party and full and complete possession shall be given to the first party of the Lots and the improvements thereon without further notice.

" 'This contract shall be binding upon both first and second parties, the executors, administrators, heirs and assigns of the first party, and the successors and assigns of the second party.' "

Other allegations admitted were, that after the signing of the sale contract, defendant proceeded to carry out its part of the contract, paid the installments due in December, 1945, and in January, 1946 and "overlooked the $50.00 installment payment due for February," but a check was dispatched, dated February 22, 1946; that, thereafter, and "under the date of February 23, the plaintiff unexpectedly notified the said Virginia B. May that he would no longer accept the monthly installments on the purchase price"; that "upon receipt of the notice from the plaintiff that he would not accept the February installment due but was declaring a forfeiture and demanding possession, the defendant offered to pay the entire balance of $5850.00 due on the principal, together with any accrued interest due, as provided for in the contract of sale"; and that defendant "now and here, by its pleading and in open court, tenders full payment of all said balance due, including interest, and requests from plaintiff the deed to said premises as provided in said sales contract of November 1, 1945."

Defendant further alleged that Fred W. May virtually owned and operated defendant corporation and was its active manager; that Virginia B. May was a housewife with four small children and limited business experience and Mrs. McKesson was an elderly lady, who had had some prior newspaper experience; that the two women were attempting to carry on the newspaper business in the absence of Fred

940

W. May; that Mrs. May, while carrying on the business, inadvertently overlooked the $50.00 installment payment for February and omitted making the payment, until February 22nd, when she sent the same to plaintiff by mail in the usual and customary way; that the failure to make the payment, until after the due date, was unintentional and a pure oversight; that, immediately upon discovery that it had not been paid, the payment was made; and that plaintiff had made no demand for payment, had not called attention to the failure to pay, had declared no forfeiture and had indicated no intention to forfeit, until after the February payment was in his hands. These allegations, denied by the reply, were supported by substantial evidence at the trial. There was further evidence that Mrs. May, who handled the payments on the contract, was ill and extremely nervous with goiter in February, 1946.

Plaintiff in his own behalf testified that he was the owner of the property on the date he "entered into a contract to sell it" to the defendant for $6200.00; and that defendant had "bought" the property and was in possession. He identified the warranty deed, which he had executed pursuant to the contract, and admitted that the deed and abstract, deposited with the bank, were recovered because "the contract had been forfeited." The payment of rent stopped with the sale and later payments were made under the contract. The payment due February 1, was not received until February, 22. He did not accept it, but returned the check by mail. He identified and offered in evidence two notices which his attorney had prepared. One notifying the bank to return all papers to him and the other addressed to the defendant giving notice of forfeiture and demanding possession.

The notice to defendant, dated February 23, 1946, recited that defendant did on November 1, 1945, "enter into a certain 'sale contract' wherein I agreed to sell to you, and you agreed to buy from me" the described premises upon the terms and conditions in the contract provided and "you agreed, among other things, to pay to me on February 1, 1946, the sum of fifty dollars ($50.00)." The notice further recited the failure to pay on February 1, or within 15 days after that date "the sum so owed by you to me." It charged a breach of the provisions of the contract by "failing to make the payment within the time therein provided," and advised that the "sum or sums heretofore paid by you to me shall stand forfeited."

The notice to the bank for the return of the deed and abstract recited that under the sale contract defendant was "legally obligated to pay" plaintiff the sum of $50.00 on February 1, 1946, yet it did not pay said amount until February 22, 1946, when it sent a check dated February 22, 1946, and marked "for February payment," and that the check was refused and returned and the contract forfeited. Both notices were signed by the plaintiff.

Plaintiff conceded that, perhaps, he was in defendant's place of business between February 1st and 15th, 1946, but did not think it was necessary to suggest to Mrs. May that she had not made the February payment. He did not immediately notify her after she defaulted on the contract, nor state that he would declare a forfeiture. He didn't say a word about the forfeiture until after he had received the check for the February payment in the usual way about February 22nd. There was no objection to the check as such. After he got the check in his possession in the usual way, he returned it, saying he was declaring a forfeiture. He didn't know that there was any change in his condition or affairs between February 15th and February 22nd, but he guessed he was in the same situation in a business way on the 22nd that he was on the 15th. Other facts will be stated in the course of the opinion.

The court found that defendant was entitled to redeem upon the payment of $5863.36 and that plaintiff had refused to accept the fund and deliver the deed and abstract. Defendant was permitted to pay the sum into court for the use of the plaintiff and plaintiff was ordered to deliver the warranty deed and abstract to defendant.

Appellant contends "the court erred in admitting testimony relative to a prior lease contract between the parties." No authorities are cited and no particular testimony is pointed out. The record shows that over objection, the respondent's attorney was permitted to examine appellant concerning matters prior to contract of November 1, 1945. The facts developed were those set forth in the cross petition and admitted by the reply. There was no prejudicial error in the admission of this testimony which merely confirmed the existence of facts admitted by the pleadings.

Appellant contends the decree is erroneous, because (1) the agreement "by its clear, precise and unambiguous language is an option contract with a provision for liquidated damages," (2) "time was of the essence" and the agreement "expressly conditional upon strict compliance with the time stipulations," (3) respondent had not performed nor *tendered* performance of its part of the agreement, (4) no question of forfeiture or penalty was involved in the case, since the provision was for liquidated damages, and (5) there was no substantial evidence to support the decree.

Was respondent obligated to purchase and pay for the property? See, Frizzel v. Stewart Lumber Co., 329 Mo. 376, 44 S. W. (2d) 615, and Hollmann v. Conlon, 143 Mo. 369, 379, 45 S. W. 275, relied upon by appellant. The pleadings and evidence show that a valid subsisting contract existed before the contract in question was drawn. Respondent was in possession under a written lease, with an option to purchase at a fixed price. The option was exercised within the time provided. Appellant admitted receipt of respondent's written notice of intention to exercise the option and purchase the property.

Rockhill Tennis Club v. Volker, 331 Mo. 947, 56 S. W. (2d) 9, 17; 55 Am. Jur. 506, Sec. 38. The parties, thereafter, intended to enter into a further contract with reference to terms of the sale and the payment of the purchase price. The contract, designated "sale contract," was drawn and signed. It provided that the property was "bargained and sold" to the purchaser. A definite consideration was "to be paid." The purchaser "also" agreed to pay taxes and interest, insure the property and to keep the improvements in good condition. A deed and abstract of title were to be delivered. The contract was to be binding on both parties. The parties evidenced no intention to change the existing vendor-purchaser relationship. An abstract of title was furnished. A deed, in due form, was executed by appellant and placed in escrow with the bank. The down payment was made on the purchase price and, later, two monthly installments were paid. The third installment was forwarded by respondent and received by appellant out of time, acceptance was refused and the payment returned.

It is agreed that the intention of the parties controls the interpretation of the contract, but appellant insists that the written contract "must be given some consideration in arriving at that intent," and that "no election, option or choice was reserved to appellant" concerning the termination of the contract. The contract as written does not in express words say that second party agrees to buy the described property and pay the consideration mentioned, nor does it say for whose benefit the forfeiture provision is intended. In construing the contract and determining whether an agreement on the part of respondent to purchase and pay may be implied from the written provisions of the contract, and whether the forfeiture provision was for respondent's benefit, the court may consider, as extrinsic aids to construction, the facts and circumstances admitted by the pleadings and shown in evidence. Paisley v. Lucas, 346 Mo. 827, 143 S. W. (2d) 262; 66 C. J. 490, Sec. 13. See, also, 55 Am. Jur. 500, Sec. 30. When we consider the existing relationship of the parties, the detailed provisions of the contract, ▮▮▮▮ the fact that respondent was in possession and had exercised its option to purchase, together with all other surrounding facts and circumstances attending the execution of the new contract, as well as the interpretation given to its provisions by the parties, it is not difficult to determine *who* was to pay the purchase price, or for *whose benefit* the forfeiture provision was intended. To construe the forfeiture provision as intended for the benefit of respondent and as directly authorizing it to fail and refuse to comply with particular obligations previously assumed under the contract, to construe the provision as permitting respondent to be relieved at its own election from all obligations imposed, and to take advantage of its own default to escape further liability, is to construe the contract contrary to the intention of the parties as ex-

pressed therein and contrary to the intention and purpose of the parties as shown by all of the surrounding facts and circumstances. 55 Am. Jur. 1014, Sec. 621; Rogers v. Dorrance, 140 Md. 419, 424, 117 Atl. 564, 32 A. L. R. 573, 576; See, Annotation, 32 A. L. R. 585. No *privilege* was conferred upon second party to abandon the contract at will. Knapp v. Strauss, 227 Mo. App. 822, 58 S. W. (2d) 805, 809. The writing evidenced a binding contract for the purchase and sale of the described real estate. Knisely v. Leathe (Mo. Sup.), 178 S. W. 453, 457; Knisely v. Leathe, 256 Mo. 341, 375, 166 S. W. 257. Liability to pay the entire purchase price survived any failure to pay an installment when due. Levine v. Humphreys, 297 Mo. 555, 249 S. W. 395, 398.

In the cross petition defendant alleged that plaintiff failed to furnish an abstract showing a good *and* marketable title, as provided by the contract; and that "defendant was not required to pay any portion of the purchase money pending its receipt of said abstract and a reasonable opportunity to examine the same." The facts are not in dispute on appellant's own testimony. After the contract of November 1, 1945, was signed, appellant took the abstract of title to respondent's office and delivered it to Mrs. May, acting president of respondent corporation, and told her she could have it examined. She said she wanted to examine the title. While no time was fixed for furnishing the abstract, the contract provided that the abstract be "furnished the second party" and it, subsequently, provided for the "deposit" of the abstract in escrow, and still later provided for its *delivery* when the purchase price and interest were paid. The parties have construed the contract as requiring that the abstract be "furnished" at once and such was a reasonable construction. The last certificate on the abstract "furnished" was dated September 4, 1935. Appellant admitted that, perhaps, he told Mrs. May to take the abstract to the abstractor to be brought down to date. In any event, she delivered it to the abstractor and it was subsequently certified to November 6, 1945. When the abstract had been so certified, appellant obtained it from the abstractor, paid the fee for bringing it to date, and caused it to be placed in escrow with the bank. It is conceded that the completed abstract was not "furnished" to respondent and that Mrs. May "never asked for it any more." Appellant argues that "there is nothing in the record to show that she (Mrs. May) was prevented from having the abstract examined." We need not determine that issue. No abstract showing a good and marketable title in appellant was ever "furnished" to defendant, prior to the alleged declaration of forfeiture. While it is clear that the provision was waived by respondent as to the first and second monthly installments, and that the third payment was not delayed on that account, yet it does not follow that appellant could require payment or declare a forfeiture for non-payment, without furnishing

an abstract as required. Appellant himself being in default could not rescind nor declare a forfeiture. Meyer Milling Co. v. Baker, 328 Mo. 1246, 43 S. W. (2d) 794, 796; 17 C. J. S. 909, Sec. 423; 55 Am. Jur. 1024, Sec. 632; 55 Am. Jur. 975, Sec. 581. The parties have now stipulated that the abstract, as certified to November 6, 1945, showed title in appellant, but no such abstract had been "furnished" respondent when the forfeiture was attempted.

■ In effect, the decree granted specific enforcement of the contract. It is well settled that a party seeking specific ■ performance of such a contract must allege and prove the performance, or offer to perform on his part of every essential ingredient of the contract which was required of him. Lanyon v. Chesney, 186 Mo. 540, 551, 85 S. W. 568; Davis v. Petty, 147 Mo. 374, 386, 48 S. W. 944; 49 Am. Jur. 53, Sec. 40. In this case it is admitted that the payment due February 1st, 1946, was not made until February 22nd, and not within the "fifteen days after due date" as provided by the contract. In ordinary contracts for the sale of real estate, equity does not regard time as of the essence of the agreement, but the parties may make time of the essence, even without express stipulation to that effect, where such intent is clearly manifested by the terms of the agreement. Branch v. Lee (Mo. Sup.), 159 S. W. (2d) 677, 679; Wimer v. Wagner, 323 Mo. 1156, 20 S. W. (2d) 650, 652; Hollmann v. Conlon, supra (143 Mo. 369, 382); 49 Am. Jur. 56, Sec. 42. In this case the contract fixed the dates for the installment payments and provided for forfeiture if the payments were not so made, or within 15 days thereafter. We may assume, without deciding, that time was of the essence of the agreement.

In this case, respondent failed to make the third installment payment within the time provided by the contract. Respondent is not entitled to the aid of a court of equity by way of specific enforcement, "unless there be something in the facts to take the case out of the usual rule." Wimer v. Wagner, supra, (20 S. W. (2d) 650, 653(4) ); Suhre v. Busch, 343 Mo. 170, 120 S. W. (2d) 47, 54.

"Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited, will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, . . . may, and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions." Cheney v. Libby, 134 U. S. 68, 78, 33 L. Ed. 818, 10 S. Ct. 498. "Strict and literal performance of all the

conditions of a contract is not invariably an essential prerequisite to a decree for specific performance." Electric Secret Serv. Co. v. Gill-Alexander Electric Mfg. Co., 125 Mo. 140, 156, 28 S. W. 486; O'Fallon v. Kennerly, 45 Mo. 124, 127. See, also, Restatement, Law of Contracts, Vol. II, p. 691, Sec. 375.

The trial court estimated appellant's damages at "15 or 20 cents" on account of the six day delay in paying the third installment. Scheerer v. Scheerer, 287 Mo. 92, 229 S. W. 192, 197. On the basis of the admitted rental value of the property, the effort of appellant to recover the property rather than the sale price and "judicial notice" that real estate values in and around Lebanon had increased "very materially," the court estimated that, if no relief was granted, the respondent would lose "in the neighborhood of $4000.00 (including the $350 paid) . . . because they failed to pay this on time." We need not determine the correctness of these conclusions. The facts attending respondent's default are not in dispute. The delay was unintentional and due to oversight, inadvertence and mistake, under unusual facts to which the vicissitudes of war and illness apparently contributed. Appellant admitted that his situation had not changed during the brief period of delay in payment of the third installment. Appellant resided in the same community and was in and out of respondent's place of business and, perhaps, even during February without mentioning the delinquency. In fact, seeing appellant pass respondent's office caused Mrs. May to mail the check on the 22nd. Promptly, thereafter, respondent tendered the full balance due on the contract. The sufficiency of the *tender* then and later was admitted by the pleadings. While no legal duty rested upon appellant to ask for the February installment, it is clear that he could have had it had he wanted it. Respondent does not seek to reinstate the contract, but to discharge all obligations thereunder. No facts appear which would make it unjust of inequitable to grant the affirmative relief asked.

The judgment is affirmed. *Bradley* and *Van Osdol*, CC., concur.

PER CURIAM:—The foregoing opinon by DALTON, C., is adopted as the opinion of the court. All the judges concur.