Vincent KAUFLIN and Irene B. Kauflin,
Appellants,

v.

Charles TUREK and Gloria Turek,
Respondents.

No. 44381.

Supreme Court of Missouri.

Division No. 1.

April 11, 1955.

Melville A. Ochsner, St. Louis, for appellants.

Lackland H. Bloom, St. Louis, Charles H. Rehm, Ste. Genevieve, for respondents.

COIL, Commissioner.

Appellants (Mr. and Mrs. Kauflin) paid respondents (Mr. and Mrs. Turck) $900 at the time they executed an agreement to purchase the Turck farm. The Kauflins sued to recover the $900, averring that respondents "wholly failed to perform their part of" the "Agreement of Sale". Respondents denied liability for the $900 and counterclaimed, seeking reformation of the sale contract, on the ground of mutual mistake, and specific performance of the reformed agreement. The trial court's judgment dismissed appellants' petition and granted respondents specific performance of the "Agreement of Sale * * *, as herein reformed to express the intention of the parties * * *."

By the presently pertinent parts of the sale agreement, executed April 7, 1953, the Tureks agreed to sell and the Kauflins to buy the Turck farm near Farmington, Missouri, for $9,000 to be paid "as follows: Amount paid on execution of this contract: $900; additional cash on delivery of deed: $3,350; mortgage assumed by second party [purchasers]: 3,000 mor[tg]age held By the Millman Lumber Co. of St. Louis Mo at 4% And agrees to pay the balance as follows: and second mor[tg]age to Charles Turck [respondent] of 1,750 for three years

at 5% Int[e]rest payable semi an[n]u[al]ly * * *. If either party hereto fails or neglects to perform his part of this agreement, he shall forthwith pay and forfeit as liquidated damages to the other party a sum equal to ten per cent of the agreed price of sale, except that if said agreed price is less than $2,000, said sum shall be $200"; and the contract further provided that respondents would deliver to appellants a warranty deed on May 1, 1953, upon receipt of payment as theretofore provided.

As noted, the contract provided for the assumption by the purchasers of a $3,000 mortgage held by Millman Lumber Company "at 4%." The parties agree that the meaning of that provision was that the Kauflins were to assume a mortgage which secured a note bearing 4 per cent annual interest.

A. B. Harbour, a United Farm Agency representative, was the Tureks' agent in the sale of the farm. Harbour obtained the information from the Tureks that the mortgage held by Millman secured a note bearing 4 per cent interest. Harbour, acting on that information, placed the "at 4%" in the sale agreement. Later, but prior to May 1, 1953 (the closing date), Kauflin, at Harbour's suggestion, went to Millman to ascertain whether that company would extend the due date of the loan. He discovered that the secured note bore interest at 4½ rather than 4 per cent. Kauflin called Harbour and said that he had not agreed to assume a 4½ per cent loan and therefore would not close the deal.

Mr. Kauflin testified that he told Harbour (after Kauflin discovered that Millman held a 4½ per cent note): "I had agreed to assume the loan at four per cent and it was not my intention to assume one at four and one half per cent * * * I told him I could not close the deal at four and one half per cent because I had wanted to close it at four per cent. I would not have put my signature to a four and one half per cent loan." Kauflin also said: "* * * I signed the contract agreeing to assume a deed of trust at four per cent"; that he refused to go through with the con-

tract because he knew that the Tureks could not provide a four per cent mortgage with the Millman Company, and "that is the reason why I could not get another four per cent loan"; that he knew that the note was negotiable and had no special reason for wanting to pay the Millman Company; that he knew at the time he signed the contract that the Millman note was due in six or seven months; and that Mr. Harbour, prior to May 1, offered to pay him the difference between 4 and 4½ per cent for the period between the closing date of the sale and the due date of the note. (This amount was $8.75.)

Mr. Harbour testified that the deed signed by the Tureks was available for delivery and that respondents were prepared to comply with all conditions of the contract on May 1, the closing date; that prior to May 1, he (Harbour) offered to pay to the Kauflins the difference between 4 and 4½ per cent for the remaining six or seven months; that Turek "picked up the loan there [the Millman loan] and offered it to Mr. Kauflin all for four per cent" but the witness did not know whether that was prior to May 1, and did not know whether the Tureks could have gotten control of the loan prior to May 1; that Kauflin told him prior to May 1 that he (Kauflin) was not going through with the contract; and that prior to May 1, the Tureks had agreed to finance the $3,000 loan at 4 per cent.

■ A suit for specific performance of a contract to convey land involves title to real estate within the meaning of Art. V, § 3, 1945 Mo.Const., V.A.M.S., and, thus, this court has jurisdiction. Drake v. Hicks, Mo., 249 S.W.2d 358, 360 [1].

■ A vendor may have specific performance of a contract for the sale of land. Eisenbeis v. Shillington, 349 Mo. 108, 113 [1], 159 S.W.2d 641, 643 [1].

■ Appellants remind us that "There are two propositions that are fundamental in the law of specific performance. The one is that the court will not make a contract for the parties, and that if it under-

takes to enforce their own contract, it will require the performance of neither more nor less than that which the parties themselves have agreed to do. Baldwin v. Corcoran, 320 Mo. 813, 7 S.W.2d 967; Rayburn v. Atkinson [Mo., 206 S.W.2d 512]. The other is that the party who seeks relief must show his performance or offer of performance of every essential obligation resting upon him before the other party may be compelled to perform. Parkhurst v. Lebanon Publishing Co., 356 Mo. 934, 204 S.W.2d 241; Long v. Rogers, Mo. App., 185 S.W.2d 863." Drake v. Hicks, supra, 249 S.W.2d 360 [3, 4].

From this eminently correct statement as a premise, appellants take the position that specific performance may not be granted in the present case because to do so, the court would need to make a new contract between the parties and because respondents could not perform every essential obligation resting upon them.

■ We cannot agree. In our view, Kauflin's testimony conclusively demonstrates the fact that the contract provision requiring appellants to assume the Millman mortgage securing a note bearing 4 per cent interest was essentially an agreement to assume a 4 per cent $3,000 obligation due in six or seven months. The fact that the Millman mortgage was erroneously described (with no suggestion in the evidence that such description was the result of other than the Turek's innocent mistake) as securing a 4½ rather than a 4 per cent note, was not, under the circumstances of this case, a material matter, provided that respondents made it possible for appellants to have under the contract essentially what they agreed to have. This, respondents effectively did, by offering, prior to the closing date, to pay the ½ per cent interest for the duration of the note. (Furthermore, appellants, by informing respondents prior to May 1 that they would not perform, on the assumption that respondents could not make available the Millman obligation at 4 per cent, may have prevented respondents from paying direct to Millman ½ per cent interest on $3,000 for the duration

of the note and thereby being in a position to perform in exact compliance with the contract.) But, in any event, the essential relevant portion of the purchasers' agreement was that as part of the purchase price they were to assume a 4 per cent note due in six or seven months. They attached no importance to the fact that it was a note held by Millman, and they knew the note was negotiable. On May 1, 1953, the closing date, respondents were prepared to essentially perform every obligation which the contract placed upon them. Appellants, in view of respondents' offer, could have suffered no loss by reason of the erroneous description of the Millman note and, under the evidence, could not have changed their position.

What we recently said in Landau v. St. Louis Public Service Co., Mo., 273 S.W.2d 255, 258 [7], 259, is here applicable. "It may be further noted that there is no evidence in this case of any change of position by plaintiff or that conditions had in any way changed so as to make it inequitable to require plaintiff to perform. See Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47; Parkhurst v. Lebanon Publishing Co., 356 Mo. 934, 204 S.W.2d 241. The Parkhurst case quotes with approval 204 S.W.2d 247 the following: ' "Strict and literal performance of all the conditions of a contract is not invariably an essential prerequisite to a decree for specific performance." ' "

Under the circumstances of this case we are of the opinion that the trial chancellor correctly granted respondents specific performance of the sale contract. We do not reach the question of whether the trial court also correctly adjudged "reformation" of the contract. We see no necessity for or desirability of reforming the contract.

Appellants also contend that the heretofore noted provision of the contract as to "liquidated damages" prevents specific performance. Appellants took the position in their original action that they were entitled to the $900 theretofore paid by them—not that they were entitled to that $900 and an additional $900 as "liquidated damages." Their answer to respondents' counterclaim was a general denial and they asserted no alternative position that in any event their liability was limited to $900. And it does not appear that they took any such position at the trial. The trial court did not expressly decide such an issue. Their motion for new trial did not affirmatively assert any such position. Thus, their present contention is made for the first time on this appeal. We may not consider allegations of error in civil appeals not presented to or expressly decided by the trial court. Section 512.160 RSMo 1949, V.A.M.S. Blevins v. Thompson, Mo., 255 S.W.2d 787, 791 [3]. We decline, therefore, to rule appellants' present contention. We may note in passing, however, that it does not clearly appear from a consideration of the contract as a whole that the parties intended that the purchasers were to have the option to perform or pay stipulated damages. And appellants' view in that respect is made clear by this from their brief: "In the case at bar, there is no provision in this contract stating that either party may elect to cancel the contract or enforce its provisions as they may determine, but this contract provided only for liquidated damages in the event of default."

The judgment of the trial court, in so far as it provides for a judgment for respondents on the claim asserted in appellants' petition and in so far as it adjudges that respondents are entitled to specific performance of the "Agreement of Sale", should be affirmed. The judgment should be modified, however, to provide for specific performance without reference to any reformation of the agreement. Further, the judgment as entered provided for the payment by the purchaser of $6,350 and costs to the circuit clerk within 30 days. We think it would be more equitable, under all the circumstances, that the judgment provide for the payment of $3,350 to the clerk within a specified time; that appellants be required to execute a first deed of trust on the farm to respondents securing a $3,000 4 per cent note payable after the

same period of time that the Millman note had to run from May 1, 1953, to its maturity, and that a second deed of trust on the farm securing a 5 per cent, 3-year note for $1,750 be executed and delivered by appellants.

The case is, therefore, remanded with directions to enter a judgment in accord with the views herein expressed, with such other provisions to effectuate such judgment as to the trial court may seem proper. The costs on this appeal to be paid by appellants.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.