**Lillian BUTLER, Plaintiff-Appellants,**

v.

**CENTERRE TRUST CO., Personal Representative of the Estate of Jack G. Butler, deceased, Suzanne Butler Waterbury Sherer, Jackson Dewitt Waterbury, III, Arthur Barrows Waterbury, Diana Lynn Butler, Jack Griffith Butler, III and James H. Meredith, Defendants-Respondents.**

**No. 12718.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 24, 1983.

Tony K. Vollers, Frances M. Luehrman, St. Louis, Theodore S. Schechter, Schechter & Watkins, Clayton, for plaintiff-appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for defendant-respondent James H. Meredith.

C. Perry Bascom, St. Louis, for defendant-respondent Centerre Trust Co.

MAUS, Presiding Judge.

By this action the plaintiff seeks a declaration that instruments executed by her deceased father-in-law, Jack G. Butler, did not create an option in favor of James H. Meredith. She further contends that even if an option was created, it is invalid because of the absence of a time limitation upon its exercise. Meredith answered and asked for a judgment declaring the existence of an option and that he had exercised the same. Defendant Centerre Trust Company, as the personal representative of the estate of Butler, filed a similar pleading. The remaining defendants are others interested in the estate of Butler. They did not appear. The trial court found the issues in favor of Meredith and entered judgment accordingly. The plaintiff appeals.

During the trial of this case, plaintiff has insisted that evidence of the circumstances surrounding the parties at the time of the execution of the two instruments involved should not be considered. She has based her arguments solely upon a construction of the language of those instruments. It is not necessary to recognize and reconcile all of the statements in the cases and texts concerning the admissibility of such extrinsic evidence. The more recent statements hold that such evidence is always admissible.

Where the principals to a negotiated contract dispute the effect of the agreement, a court—quite apart from ambiguity or nonambiguity—is entitled to look at more than only the words of undertaking. The situation of the principals and the context of the transaction are relevant to interpret the prevalent meaning of the words used for contract. . . . That evidence does not vary written terms of contract but only aids to discern the prevalent sense of the terms and, hence, the

reasonable expectations of the principals. *Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388, 394 (Mo.App.1981) (Citations omitted).

Also see Morgan, Basic Problems of Evidence, p. 416. It is clear such evidence was admissible in this case. *Tri-State Gas Co. v. Kansas City Southern Railway Co.*, 484 S.W.2d 252 (Mo.1972). A brief summary of that evidence follows, excluding evidence asserted to violate the parol evidence rule and to be inadmissible under the Dead Man's Statute. § 491.010.

The defendant Meredith is a lawyer and for more than 20 years has been a distinguished Judge of the United States District Court for the Eastern District of Missouri. Butler was a banker with the Bank of St. Louis. For many years prior to his retirement, he was the chief executive officer of that bank. From 1955 until his appointment as Judge, Meredith served on its Board of Directors. Butler and Meredith were friends. They hunted and fished together. They were said to be "as close as two men could be and not be brothers."

Meredith became interested in buying land in Phelps County for hunting and fishing and as a retreat from city life. Butler joined Meredith in this venture, although initially he was not very interested in using the property personally. They bought 520 acres and a jeep type vehicle. Of that land, 80 to 100 acres were open and the balance was in brush and small timber. There was a dwelling on the land. In 1968, Butler's wife died. After that he frequently spent time at the property. On October 17, 1969, the parties executed an agreement setting forth the terms upon the basis of which Meredith conveyed his ½ interest to Butler. This instrument will be referred to as the "Original Agreement." After Butler retired in 1973 or 1974, he spent even more time on the property. About 1975, he moved there. Meredith continued to use the property and was a frequent visitor. On April 13, 1976, the parties executed an instrument amending the Original Agreement. The latter instrument was entitled and will be referred to as the "Amendatory Agreement."

Butler died April 15, 1981. As stated, Centerre Trust Co. is the personal representative of his estate. By his Will, Butler granted the personal representative power to sell real and personal property. There is no contention made that if the Original Agreement and the Amendatory Agreement granted Meredith an option to purchase the 520 acres, he has not effectively exercised that option. Meredith has tendered and stands ready to pay the personal representative $35,000 pursuant thereto. The personal representative concedes the existence of an option and its exercise and is prepared to convey the property to Meredith.

After the premises, the Original Agreement in paragraph 1 provides Meredith will sell the property to Butler for $15,000. Paragraph 2 provides that Meredith shall have the right to use the property, including "all furnishings in all structures thereon, alone or in the company of his family or friends, for hunting, fishing, other recreation and social purposes" revocable only "upon the happening of Event A or Event B or Event C." These Events read as follows:

*Event A.* The Property is sold by J.G. Butler in accordance with the provisions of this Agreement.

*Event B.* James H. Meredith dies and J.G. Butler pays his estate $5,000.00 cash; and the obligation to pay said sum shall be a debt of the estate of J.G. Butler.

*Event C.* J.G. Butler dies and James H. Meredith declines to purchase the Property from the estate or heirs of J.G. Butler for the total price of $35,000.00 cash, which purchase he is hereby given the right to make, and the estate or heirs of J.G. Butler upon such declination buys the right of use from James H. Meredith for the total price of $5,000.00 cash, which sum James H. Meredith must forthwith accept in consideration of the termination of said right of use if he does not effect pur-

chase of the Property for said $35,000.00 price within ninety (90) days after he is presented with evidence that the estate or heirs of J.G. Butler are able to convey merchantable title to the Property.

Paragraph 3 provided that if Butler desired to sell the property during Meredith's life, Meredith would have the first refusal. If Meredith elected to purchase, he would receive a credit of $5,000.00 upon the purchase price. If Meredith did not elect to purchase, he would be paid ⅛ of the purchase price for the loss of the right to use the property.

The Amendatory Agreement first recited that Butler had paid to Meredith $4,900. By the Amendatory Agreement, Event B provided for the payment of $100.00 instead of $5,000.00 to Meredith's estate. Event C was amended to read as follows:

J.G. Butler dies and James H. Meredith declines to purchase the Property from the estate or heirs of J.G. Butler for the total cash price of $35,000.00 if purchased during the one (1) month period next following the date of J.G. Butler's death, $34,700.00 for the first (1st) month thereafter and *decending* [sic] thus at the rate of $300.00 *every succeeding month for the next forty five (45) months, but thereafter ascending* in price at the rate of $300.00 every month without any limit on the price so determined by passage of time and the application of this provision. Upon tender of the purchase price determined hereunder, the estate or heirs of J.G. Butler must, before taking possession of said purchase price, present evidence of ability to convey merchantable title to the Property, which evidence may take the form of a policy of title insurance, and they shall have ninety (90) days to present such evidence.

The appellant's first point is that no option was created. To support this point she cites legal axioms, such as the following. "Options are *not in favor* in courts of equity . . . ." *Chapman v. Breeze,* 355 Mo. 873, 198 S.W.2d 717, 719 (1946) (Emphasis added). Options "are usually strictly construed

as against the person whose right it is to exercise the option [and] will be held void for lack of certainty." *Krall v. Light,* 240 Mo.App. 480, 210 S.W.2d 739, 746 (1948). She argues the language of the Amendatory Agreement does not in positive terms give Meredith the right to purchase, but speaks only of what happens if Meredith declines to purchase. She then reasons that Meredith can decline only if Butler's heirs elect to offer to sell. She cites the absence of "operative words" and "proper words of conveyance." In her initial brief she relies upon absence in the Amendatory Agreement of the phrase "which purchase he is hereby given the right to make." However, in her reply brief, she argues that even though the Original Agreement contained that phrase, it did not create an option. Again she emphasizes the language "declines to purchase." She argues that the right to purchase refers only to a preemptive right, the right of first refusal at a designated price if Butler or his heirs elected to sell.

■ The general lack of merit of the appellant's position is demonstrated by the latter argument. Event C in both instruments prescribes what may happen if Butler dies. In neither instrument is there any reference to an election to sell by Butler's heirs. Meredith's right of first refusal if Butler elected to sell is covered in a subsequent paragraph in both instruments. An instrument is not to be construed by focusing upon a single aspect thereof, such as the phrase, "declines to purchase" and ascribing a meaning thereto, without reference to its context in the whole instrument. That could result in construction by distortion.

■ "[T]he instrument must be construed as a whole." *Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268, 270 (banc 1946). "The courts seek to ascertain the intent of the parties by giving to the language used its natural, ordinary, and *common sense meaning,* but they also look to the entire contract; and the court should consider the object, nature and purpose of the agreement." *Wilshire Const. Co. v. Union Elec. Co.,* 463 S.W.2d 903, 906 (Mo.1971) (Empha-

sis added). It is not necessary that an interest in land be created by express technical language. *Parkhurst v. Lebanon Pub. Co.,* 356 Mo. 934, 204 S.W.2d 241 (1947). "[T]he use of the word option in a contract is not conclusive but the contract must be construed by what its language means rather than by the definition of certain terms used therein." *Sunray Oil Company v. Lewis,* 434 S.W.2d 777, 780 (Mo.App.1968).

■ It is obvious the instruments were executed by two friends. Otherwise, there would be no provision for joint use of the facilities. Their relationship may account for the unusual financial arrangement of the belated payment of $4,900 and the descending and then ascending option price. It may also account for the fact that Meredith promptly tendered $35,000, rather than take advantage of a descending price. Event C is applicable when "Butler dies and James H. Meredith declines to purchase." As noted, the appellant argues the right of declination exists only if Butler's heirs elected to sell. But, the right to decline is not so conditioned. The price is fixed. The right to buy is clearly established by the provision obligating the heirs to produce evidence of marketable title "upon tender of the purchase price *determined hereunder.*" (Emphasis added). When considered in context, there can be no serious debate about the meaning of the right to decline to purchase for a price fixed in the instrument.

■ By her last two points the appellant asserts the option in the Amendatory Agreement is invalid because of the absence of a time limitation upon its exercise. She argues it thereby violates the rule against perpetuities and is an unreasonable restraint on alienation. The pleadings, the oral arguments and briefs of the parties before the trial court are a part of the record in this court. The above contentions were not advanced to the trial court. They are not properly before this court for review. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31 (Mo. banc 1982); *Shelton v. M & A Electric Power Cooperative,* 451 S.W.2d 375 (Mo.App.1970).

■ However, it is apparent those contentions have no validity. The instruments in paragraph 2 refer to Meredith's right to use for his life. They provide Meredith with a right of first refusal if Butler sells during the life of Meredith. Events A, B and C deal with the termination of that right of lifetime use. Event B makes provision for the death of Meredith during the life of Butler. Event C is applicable upon the death of Butler during the life of Meredith. When those provisions are read together in context with the lifetime right to use as provided in the opening clause of paragraph 2, the right to purchase must be exercised by Meredith in his lifetime. The appellant's last two points are denied. The judgment of the trial court is affirmed.

HOGAN and PREWITT, JJ., concur.